Sucesores de Esmoris & Co., Demandante y Apelada, *v.* D. S. Stern & Co., Demandada y Apelante.

Apelación procedente de la Corte de Distrito de Mayagüez en pleito sobre daños y perjuicios.

No. 2331.—Resuelto en junio 21, 1921.

Daños y Perjuicios por Incumplimiento de Contrato—Derecho de Reclamar Daños antes de la Fecha en que Debe Cumplirse el Contrato.—Cuando una parte en un supuesto contrato niega absolutamente su existencia y se le demanda por daños y perjuicios por incumplimiento del mismo, la otra parte contratante no tiene que esperar que llegue la alegada fecha para su cumplimiento. El derecho de acción de la segunda surge inmediatamente cuando se niega el contrato.

Id. — Estoppel — Transacciones por Medio de Mandatario — Facultades del Agente.—Cuando el mandante por su acto voluntario coloca al agente en una situación tal que una persona de ordinaria prudencia entendida en los usos del negocio y la naturaleza del mismo en particular está justificada en suponer que tal agente tiene facultades para realizar un acto en particular y por tanto negocia con el agente, el mandante está impedido en cuanto a terceros de negar la facultad del agente.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. Chas. Hartzell* y *F. Ramírez de Arellano.*

Abogados de la apelada: *Sres. Benet y Souffront.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

D. S. Stern & Co. son comerciantes. Sucesores de Esmoris & Co. los demandaron por daños y perjuicios por dejar de cumplir con un alegado contrato de entrega de arroz. Los apelados presentaron prueba tendente a establecer que los apelantes nombraron a M. E. Alcaraz & Co. como sus agentes aparentemente, o finalmente como alegan los apelados con amplia facultad por parte de los segundos para obligar a su principal en el contrato de venta realizado con dichos apelados. Los apelantes sostienen que los agentes no tenían tal facultad y que estaban limitados a hacer o recibir ofertas que habían de ser ratificadas por dichos apelantes y que tal ratificación no tuvo lugar.

A la demanda formulada en este caso fué opuesta una excepción previa sustancialmente por el fundamento de que

la acción había sido establecida prematuramente puesto que a la fecha de la radicación de la demanda no había llegado el momento de la entrega. Los demandantes enmendaron su demanda y su nueva reclamación radicada es de fecha posterior a la de la fecha de la entrega de los artículos. Podríamos tener algunas dudas en ciertos casos de si una acción que es prematura puede quedar subsanada por una demanda enmendada, pero como los demandados se negaron absolutamente a entregar los artículos y como aparecía una alegación en este sentido tanto en la demanda original como en la enmendada la corte estuvo justificada al desestimar la excepción previa en este particular. Cuando una parte en un supuesto contrato niega absolutamente su existencia y se le demanda por daños y perjuicios por incumplimiento del mismo, la otra parte contratante no tiene que esperar que llegue la alegada fecha para su cumplimiento. El derecho de acción de la segunda surge inmediatamente cuando se niega el contrato. 6 R. C. L. 102 y 23 R. C. L. 1409. Los resultados de esta saludable regla lo demuestran los hechos del caso puesto que los apelados vendieron la alegada mercancía o su equivalente a un tercero y surgió contra ellos una obligación existente. Esto resuelve el primer señalamiento de error.

El otro señalamiento es que la corte cometió error al declarar que los apelantes estaban obligados a entregar los supuestos artículos. Hubo prueba al efecto de que en abril 18, 1919, D. S. Stern & Co. escribieron una carta algo ambigua a M. E. Alcaraz & Co. por la que se autorizaba a éstos para efectuar ventas en comisión en el distrito de Mayagüez. En un párrafo subsiguiente de la carta se pide a los agentes que cablegrafíen en caso de encontrar alguna persona interesada en cuyo caso los que suscriben ofrecen informar por cable cuáles son los precios más bajos. No existe en la carta nada que demuestre claramente, si acaso, que los agentes habían de someter el nombre del pretendido comprador o que

no habría venta hasta que fuera sometida y aceptada la oferta
que es la actitud asumida por el apelante.   Ni tampoco con-
tradice necesariamente la carta la teoría de los apelantes de
que las ventas sólo podían hacerse después de tal ratificación
o confirmación.

Sea esto como fuere, en cierta fecha M. E. Alcaraz & Co.
ofrecieron vender a los apelados mil sacos de arroz a $6.10
el saco, oferta que fué aceptada por los últimos.   Debido a
cierta equivocación la oferta fué transmitida a los apelantes
al precio de $7.10.   Ellos aceptaron la oferta en estas pala-
bras: "Confirmamos Esmoris."   En realidad antes de esa
fecha los agentes, anticipando la ratificación o tal vez porque
creyeron que estaban autorizados, habían hecho un docu-
mento de venta o "Vendí" a Esmoris & Co.   Esta acepta-
ción fué comunicada a Esmoris & Co. y el contrato de mo-
mento por lo menos se consideró cerrado.   Cuando los ape-
lantes se apercibieron del error escribieron a M. E. Alcaraz
& Co. diciéndoles que el precio del arroz había subido y que
harían responsable a los agentes por la diferencia de un
dólar por saco.   Entonces empezaron negociaciones por las
que M. E. Alcaraz & Co. procuraron que Esmoris & Co. acep-
tara el precio aumentado de $7.10.   Ellos se negaron.   La
negativa fué comunicada a los apelantes.   Finalmente los
agentes y Esmoris & Co. se reunieron y Esmoris & Co. con-
vino aceptar el precio de $7.10 pero haciendo responsable
por la diferencia a M. E. Alcaraz & Co.   Mientras tanto D.
S. Stern & Co. creyendo que no había habido acuerdo, con-
signaron la mercancía ya embarcada a otra firma o firmas.
Hay prueba tendente a demostrar que M. E. Alcaraz & Co.
enseñaron el cable de aceptación a Esmoris & Co. y también
el cable en el cual Stern & Co. decían que harían responsable
del error a sus agentes.   No hay duda alguna de que cuando
la aceptación vino Esmoris & Co. no tenían ningún conoci-
miento del error cometido por M. E. Alcaraz & Co.   Al pa-
recer basado en este alegado contrato Esmoris & Co. vendió

o prometió vender 500 sacos de arroz a otra mercantil al precio de $10.50 el saco.  Este era el precio en el mercado, según deducimos hasta la fecha en que los apelantes negaron la existencia del contrato.

Hay alguna duda de si hubo algún contrato entre las par· tes hasta la fecha del cable de aceptación.  Esto al parecer ratificó el acto de los agentes al hacer el documento de venta. También Stern & Co. escribieron a Esmoris & Co. confirmando la oferta pero al precio de $7.10.  De modo que no hay duda alguna de que los agentes tenían facultades para vender a $7.10.  Ellos dieron un precio equivocado pero eran indiscutiblemente los agentes.  Asimismo cuando los mandantes se apercibieron del error no negaron entonces la existencia del contrato sino que hicieron responsable a los agentes.  Dentro de las circunstancias creemos que el siguiente principio es claramente de aplicación.

"Cuando el mandante por su acto voluntario coloca al agente en una situación tal que una persona de ordinaria prudencia entendida en los usos del negocio y naturaleza del negocio en particular está justificada en suponer que tal agente tiene facultades para realizar un acto en particular y por tanto negocia con el agente, el mandante está impedido en cuanto a terceros de negar la facultad del agente." 21 R. C. L. 907.

Véase también 2 C. J. 564.

Cuando Esmoris & Co. trataron primero de comprar, el precio del mercado era alrededor de $5.75, según tiende a mostrar la prueba.  No hay cuestión alguna de que Stern & Co. adoptaron su resolución definitiva de no hacer entrega a Esmoris & Co. cuando el precio del mercado había subido a más de $10.  Mientras tanto sus agentes estaban en negociaciones y finalmente llegaron a un acuerdo.  Si hubo alguna carencia de facultades antes creemos que es claro que los agentes estaban facultados para cerrar el negocio a $7.10 como lo demuestran las numerosas cartas y cables en los cuales los agentes aparecen tratando de efectuar un arreglo

al precio de $7.10 y la facultad de ellos para proceder así no fué negada.

No habiéndose alegado error en cuanto a la concesión de daños que fué calculada sobre la diferencia entre $7.10 que era el precio del contrato concertado y el precio del mercado de $10.50, la sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.