## LUCKIE *v.* JOHNSTON BROTHERS.

| 89 | 321 |
|----|-----|
| 93 | 546 |
| 89 | 321 |
| 118 | 14 |

1. The authority of an agent to collect need not be express, but may be implied; and where a bill for goods previously sold by him for the house he represents, together with a bill for goods sold directly by the house to the same customer, is sent to the agent, and both bills are by the latter presented to the customer, who pays both, whether under all the circumstances the sending of the bill to the agent implies authority in him to collect the money is a question of fact for the jury. That the bills had printed upon their face in small letters the words, "bills payable at this

office only," which the debtor did not notice and of which he had no knowledge at the time he made the payment, would not necessarily negative the authority, if from the other circumstances it could be fairly implied. Code, ?2864; *Adams* v. *Humphreys*, 54 *Ga*. 496; Mechem, Agency, ?341; Trainor *v.* Morrison, 78 Me. 160, 57 Am. Rep. 790; Putnam *v.* French, 53 Vt. 402, 38 Am. Rep. 682; Kinsman *v.* Kershaw, 119 Mass. 140.

2. It is discretionary with the court whether to reopen the case for the admission of more evidence at a late stage of the trial.

3. The charge of the court on the subject of ratification was correct, and as comprehensive as the evidence warranted.

May 18, 1892.                                   *Judgment reversed.*

Agency. Payment. Practice. Charge of court. Before Judge Richard H. Clark. DeKalb superior court. February term, 1891.

The plaintiffs sued Luckie for $140.29 and interest, on an account for tobacco furnished on March 2, 1889, amounting to $37.68, and for tobacco furnished on September 4, 1889, amounting to $102.61. The defendant pleaded the general issue, and payment. The jury found for the plaintiffs $141.29 with interest. The defendant moved for a new trial on the grounds that the verdict is contrary to law and evidence, and on numerous other grounds hereafter stated. The motion was overruled, and he excepted. The record shows that the goods for which the account was made· were furnished by the plaintiffs to the defendant, who paid the price charged therefor to M. J. Smith, whom he insists was the authorized . agent of the plaintiffs to collect the same; and he further claims that the plaintiffs repeatedly ratified said collection since it was made. The testimony for the plaintiffs tended to show that Smith was a traveling salesmen for them; he had authority to sell but not to collect, and was never authorized to collect but instructed not to do so. Upon the invoice of the goods sold to the defendant and produced by him under notice, was printed, "All bills must be paid at this office," which office was at Reidsville, N. C. It

further appears from the plaintiffs' evidence that on May 17, 1888, Smith wrote to them from Gainesville, Georgia, a letter containing the statement: "I want to make the trip again in August, and will let you know before I go; so you can send me statements of the accounts and authorize me to collect." On the same day he wrote to them another letter in which he said: "I notice that you say on your invoices, 'bills payable at this office only.' This will injure my trade, and I do not think it necessary. It would not look so bad or do me as much injury if it was printed on the invoice, as it will when written. This is a very hard trade to manage; I am thoroughly familiar with it and know just how particular I have to be with it; for instance, when I go to collect Hudson's, I will have to get you to send me a statement of his account, because if he has to send you the money I cannot sell him any more goods. I had to collect a bill from him to-day that I sold him. Now please do not understand me as wanting to collect, for it is exactly what I do not want to do, except when I see it is necessary to save an account or retain a customer." On July 4, 1888, Smith wrote to the plaintiffs: "Your favor 3d inst, inclosing ck. for $28.00, to hand. I have not collected any money from Mr. Langford or any one else. I was due Mr. Langford a little bill for groceries, and wanted to pay him; that is why I asked you to receipt him for his tobacco bill and charge it to me. It will cost 15 cents to have check cashed here, and it would cost Mr. Langford something to remit. I do not want you to break any rules or contract. You say that if I have collected the amount from Mr. Langford you will receipt him for same upon return of this check. If I had collected this bill I would have notified you at once, but I could not have collected without authority and receipt. I do not exactly understand your letter, so I return the check. If it does not suit you to receipt

Mr. Langford as requested, I can wait until I get some money to pay my bills and can tell Mr. Langford he will have to remit direct to you, which I think will injure our trade with him and others, especially as it is such a small matter. J. W. Hudson and C. D. Leely both wanted to pay me some money to-day, and I declined to receive it, because I told you I did not want to do any collecting except where I could not sell a good man without doing so, or to save a bill if I happened to find that we were in danger of losing it." On April 7, 1889, Smith wrote to one of the plaintiffs : "How would it suit you for us to have a settlement? I will agree to anything reasonable, and should think that you would be glad to get the matter off of hand. If there are any bills unpaid that I cannot collect, I will agree to call them lost; and unless you allow me to make an effort to have the bills paid, it is not right to withhold a settlement on that account."

For the defendant Smith testified : While employed by plaintiffs I sold tobacco for them, collected part of their bills, and looked after their business in Georgia and South Carolina. I sold goods for them to the defendant who paid me for the same. I had authority from plaintiffs to collect the money. I collected money from others for plaintiffs while I was traveling for them; cannot tell how often I did so, but did so constantly. When I collected money for them upon bills sold by me, they took it in settlement of the bills upon which I made the collection, and there was never any question about it. I had a settlement with them in December, 1890; I denied I owed them anything, but they insisted I owed them for money collected by me from their customers in an amount greater than my commissions for working for them ; I contended I did not, but compromised by giving four notes in full of all claims. Do not remember whether or not I had written authority to

collect the bill on defendant, but do know they sent me a statement of his account; do not remember whether or not I had any verbal, special authority to collect this particular bill, but I did have general authority to collect plaintiffs' bills when I thought it was to their interest to do so. I visited them at Reidsville several times, first in 1888, and last in 1889; cannot remember any exact time at which I visited them. Saw one of them in Georgia only once, in December, 1890, when we had the settlement. I did not tell defendant I had authority to collect the bill and receipt for it; he told me he wanted to pay his account, and I told him I would send to the house, get a statement, and he could then pay it. I wrote, got the statement, presented it, and he paid it. I showed him no authority. In my settlement with plaintiffs I contended that I had collected only the amount of my commissions; they contended that I had collected more than that sum. Do not remember whether this bill against defendant here sued on was specially settled at that time or not, nor whether it was included therein, nor did we specially mention that bill as one I was to settle and pay; but I know that the notes given by me were to be in full of all sums I had collected from their customers. Nothing was said that I remember about this particular bill, but the notes covered all collections I had made. I did collect for plaintiffs other bills from other parties, and had authority to do so.

Defendant testified: I ordered the first bill from the house directly; the last one I bought from Smith. Plaintiffs had collected from me on former bills through the Athens banks, I living in eleven miles of Atlanta at the time. When Smith sold me this $102.61 bill I told him I wanted to pay to him; he said he would send to plaintiffs for the bill; he did so, and in a few days he presented me with both the bills here sued on, for payment. I paid them to him, and he receipted them in

the name of plaintiffs. The bill presented was on plaintiffs' bill-heads exactly like the one put in evidence by them. I paid them to Smith about November 1, 1889. The receipts given me by him for plaintiffs were left by me with W. P. Hill of Atlanta, who has lost them; I called on him for them, and he could not find them. I did not know Smith had not given plaintiffs the money I paid, until they wrote me some time in 1890. I did not notice on their bills anything as to where bills were to be paid; believed Smith had the right to collect as he stated he did, and I paid him and he gave me the receipted accounts.

The defendant introduced a letter from the plaintiffs to him dated May 7, 1890, as follows: " Your favor received and noted. In reply would say that Mr. M. J. Smith has not paid us your account, and he has fallen so far short of all his promises to us that we are not disposed to extend further indulgence. He has promised to raise the money and settle every dollar he owes us, but the promises are all we get; and while we regret having to do so, yet if we do not receive satisfactory settlement for your account by 15th inst., we will place it in the hands of our attorneys," etc. The defendant testified that a letter offered in evidence by him purporting to have been written by the plaintiffs to Smith under date October 26, 1889, was written upon plaintiffs letter-head paper; that defendant had had several letters from them, and this one is in the handwriting of their book-keeper who has often written to him for them.

The first six special grounds for new trial are, that the court refused to charge, as requested, as follows: (1) " If you believe from the evidence that M. J. Smith had a general authority from plaintiffs to collect their bills, or if he had a special authority to collect these accounts sued on, and if you further find that he collected

the accounts sued on, then you should find for the defendant." (2) "Authority to do a thing may be either express or implied. Authority may be implied from facts and circumstances." (3) "The law does not require that one should state in express terms that he ratifies an act before he can be held to have ratified it, but if there are in evidence any facts or circumstances which show the acceptance of the act as the act of the principals, a ratification may be inferred from such facts or circumstances." (4) "If you believe from the evidence that Smith collected from defendant the accounts sued on, and did so without authority from plaintiffs, but that if afterwards plaintiffs, with a knowledge of such collection, attempted to collect out of Smith the money Smith had so collected from defendant, then I charge you that that would be a ratification of Smith's act in collecting the money, and that plaintiffs could not recover." (5) "If you find from the evidence that Smith sold for plaintiffs to defendant a bill of goods, and that plaintiffs sent the goods to defendant, and sent a bill for the price of the goods to Smith, then I charge you that is *prima facie* evidence that Smith had the authority to collect the same." (6) "If it appears from the evidence that M. J. Smith, without authority from plaintiffs, collected from defendant the accounts sued on, and if it further appears that plaintiffs, knowing of the collection by Smith, have received the notes of Smith in full of all money collected by Smith from plaintiffs' customers, if he collected any, I charge you that would constitute a ratification, and plaintiffs cannot recover."

Grounds 7-9 are, that the court erred in charging the jury as follows: (7) "It is conceded here, gentlemen, that the goods were sold and delivered to Mr. Luckie, and that the prices are correct; but the defendant pleads that he has paid these two accounts, by paying them ·to Mr. M. J. Smith, the agent of the plaintiffs. So the sole

question that you are to try, gentlemen of the jury, is whether this account has been paid or not; and whether it has been paid or not will depend, in the first place, whether you believe it has been paid to the agent of Johnston Bros., and in the second place, that the agent has been authorized to receive it. To make the payment good there must not only be the payment of the money, but it must have been paid to the proper person." The errors assigned are, that the charge does not fully state the defence; payment to an authorized agent was not the sole question for the jury to try; payment does not depend upon Smith being the agent at the time of payment. (8) " Well now, do you believe from the evidence in this case, that this agent, Mr. Smith, was authorized to sell the goods to Mr. Luckie, but was not authorized to collect for the goods? If he did collect under such circumstances and under such a power, and Mr. Luckie knew the conditions of his agency, then he would not have the right to collect, and it would not be a legal payment for Mr. Luckie to pay him. Now, Mr. Luckie must have the knowledge that his agency was thus limited; and if you believe that, in the first instance when the goods were sold, Mr. Luckie had on the bill of the plaintiffs that limitation to the power of the agency, that is sufficient to charge Mr. Luckie with a knowledge that he was not an agent to collect, although he might have been an agent to sell." The errors assigned are, that there is no evidence to sustain this charge; no evidence that Luckie had notice of such limitation; the evidence may or may not be sufficient, such is not necessarily so; the charge is confused and calculated to mislead the jury on the subject of notice to Luckie. (9) " If Mr. Smith collected this money and accounted to the plaintiffs for it by giving them his notes, and if you believe he did so account to them and he gave them his notes for it, that would be a ratifica-

tion, and Mr. Luckie's plea of payment would be good. But if, on the contrary, you do not believe from the evidence that there was such ratification by the taking of the notes, why then, so far as the ratification is concerned, it would not avail the defendant, and the matter would stand under the law as I have charged, and you would find on the other branch of the case." The errors assigned are: the latter sentence is not warranted by the evidence; it excludes defendant's other theory of ratification, based upon letter of plaintiffs to defendant of date May 7, 1890; it excludes every theory of ratification in the case, except the taking notes in settlement with Smith to settle the debt sued on.

The tenth ground is, that the verdict is contrary to the following charge: "If Mr. Smith collected this money and accounted to plaintiffs for it by giving them his notes, and if you believe he did so account to them, and he gave them his notes for it, that would be a ratification and Mr. Luckie's plea of payment would be good."

The eleventh and last ground for new trial is, that the court erred in rejecting, as irrelevant, the letter of October 26, 1889, referred to at the close of defendant's evidence, whose counsel stated in his place that neither he nor his client knew of the letter until the night before, when Smith, who resides in Atlanta, gave it to him. The purposes for which it was offered were, to show that the plaintiffs had written to Smith on that date, which was only a few days before he presented the account to the defendant for payment, to show that an account was forwarded to Smith in this letter, and to show that the plaintiffs did send accounts to Smith for collection. This letter opens with the statement: "We herewith enclose you statement of account as requested." Further on it said "We would like to send statement of the account of J. S. & Co. and see what can be done with them. We want to wind up the business completely

within the next few days." The other statements therein refer to sales of goods.

W. J. ALBERT, for plaintiff in error.

BROYLES & SON and CANDLER & THOMSON, *contra.*