634. FITZGERALD COTTON OIL COMPANY v. FARMERS SUPPLY COMPANY.

1. A person who has held out another, throughout a course of dealing, as his agent, and has thus induced third parties to deal with him as his agent, is estopped, as to such third parties, from denying the agency.
2. Under a written contract for the sale of cottonseed meal and hulls, "to be hauled out as early as convenient," it is a question for the jury to be decided in the light of all the surrounding circumstances and the exigencies of the contracting parties, as to when delivery was to take place.
(a) It is not error to admit in evidence a letter, from the buyer to the seller, demanding delivery of the remainder of the goods at a time which, under the evidence, the jury were authorized to find was reasonable for such delivery, or even at a later time, when the evidence was such as to indicate that there had been a mutual temporary disregard of the terms prescribing an earlier delivery.
3. A party can not complain of a charge which was more favorable to him than it ought to have been.
4. Where a contract is signed by a person individually, parol evidence is admissible for the purpose of showing that he was acting as agent for another.
5. Where a matter is covered correctly and sufficiently in the general charge, it is not reversible error that the judge refused to charge it in the identical language of a written request.
6. The demurrer was properly overruled. No reversible error appears in any of the grounds of certiorari.

Certiorari, from Ben Hill superior court—Judge Whipple. May 30, 1907.

Submitted November 11,—Decided December 9, 1907.

The Farmers Supply Company brought suit in the city court of Fitzgerald against the Fitzgerald Cotton Oil Company, for a breach of the following contract, which they alleged they made through their agent, Harris:

"Fitzgerald, Ga., Dec. 9th, 1905. Mr. J. H. Harris, City. Dear Sir:—We offer you one thousand sacks of Upland meal at $22.00 per ton, one thousand sacks of hulls at $8.00 per ton, same to be hauled out as early as convenient. Yours truly, Fitzgerald Cotton Oil Company by L. W. Meakin, secretary and treasurer."

"Fitzgerald Cotton Oil Company, City.

"Gentlemen: I accept the above offer. Enclosed find check for $100.00 on above. Yours truly, J. H. Harris."

The breach alleged was the failure to deliver on demand 831 sacks of meal. There was no dispute about the making of the

contract in the terms set out above.   During the month of Decem-
ber the defendant delivered some meal and hulls as called for by the
plaintiff.   On the 30th of the month the defendant wrote the fol-
lowing letter to the plaintiff:  "The price of Prime Upland C/S
Meal has advanced to $24.00 per ton F. O. B. Mill.   This price
subject to withdrawal without notice.   We will have to cancel our
trade with you and return unused portion of funds left with us
unless you immediately haul out the meal sold.   It is beyond all
oil mill terms and agreements for cash sales to be left on storage
without special agreement to that effect and without funds to cover
the amount of purchase.   We will consider the sale null and void
unless full amount is placed in our hands to cover purchase unless
the goods are hauled out at once."   The plaintiff received this let-
ter late in the afternoon on the day it was written, which was Sat-
urday.   On the following Monday morning, the first of January, the
plaintiff's manager went to the office of the defendant with a blank
check in his hand to pay for the rest of the meal and hulls, and to
haul the same out.   One Huggins was in charge of the office.
Plaintiff's manager told Huggins that he had come for the balance
of the meal and hulls, and asked him for 500 sacks.   Huggins re-
fused to let him have this amount, and finally sent him away with
ten sacks, or one thousand pounds.   When Huggins refused to let
him have more than ten sacks, plaintiff's manager did not offer to
pay for the remainder of the meal and hulls.   During the months
of January and February hulls were delivered by defendant and
paid for by plaintiff at the contract price, although plaintiff could
have purchased the hulls in the open market at a slightly lower
figure; the defendant also delivered and accepted payment for
meal during these months at the contract price of $22, although
the market price had advanced from $24 to $28 per ton.   On
March 10, 1906, the plaintiff wrote to the defendant as follows:
"We now make final demand on you for the balance of the cotton-
seed meal due us on this contract to be delivered at once, not later
than the 15th inst."   It also appears from the evidence in the
record that plaintiff had made several previous demands for meal,
which had been refused by the defendant.   Upon the failure and
refusal of the defendant to comply with the demand contained in
the letter of March 10, the plaintiff went into the open market and
bought the meal for $28 per ton; and then brought suit for the

difference between the market price of $28 per ton at that time and the contract price of $22 per ton. At the trial in the city court, the jury returned a verdict for the plaintiff; and the defendant sued out certiorari to the superior court. The error assigned in this court is the order of the judge of the superior court overruling the certiorari.

*Haygood & Cutts,* for plaintiff in error.

*E. W. Ryman, E. Wall,* contra.

POWELL, J. (After stating the foregoing facts).

1. The first assignment of error is that the manager of the plaintiff company was allowed to testify that Huggins on January 1, 1906, "refused to let me have more than a thousand pounds of meal." The objection which the defendant urges to this testimony is that it does not appear that Huggins was an agent of the company who was authorized to act; and therefore any refusal on his part would not be binding on the defendant. From the evidence in the record it appears, that Huggins was referred to by the manager of the defendant company as his bookkeeper; that when plaintiff's manager called at the office on January 1, Huggins was in charge of the business; also that he had authority to sign orders for the delivery of meal; that he was authorized to collect all money unless directed not to do so; that both before and after the day named, the plaintiff's drayman called at the office of the defendant company, and Huggins ordered meal and hulls delivered to him; that when the manager Meakin was absent, Huggins was in charge of the office, because Meakin himself testified. "When I was away from there, I left Mr. Huggins there; his instructions and duties were to issue tickets from the office, make all charges, and keep a correct record of everything that transpired in and out of the office in the way of business." In determining the extent of an agent's authority, it is more important to look to the nature of the duties he is accustomed to perform than to the name by which he is called. If his duties are those of a manager or an assistant manager, it is immaterial that he is referred to by his principal as a bookkeeper. By a course of dealing Huggins had been held out as having authority to deliver and to refuse to deliver meal and to receive payment therefor; he was thereby clothed with apparent authority to that extent. In Huffcut on Agency (2d ed.) 129, it is said: "The

sole inquiry in such a case is whether there has been a holding out of the agent as one having authority and whether the third person, acting with average prudence and good faith, was justified in believing that the agent possessed the necessary authority. If so, the principal must bear the risk, because he has held out the agent as possessing the authority which he seems to possess, and is not in a position to maintain that third parties should know that what appears to be true is not true." As was said by the Supreme Court of New Jersey, speaking through Depue, J., "A principal is bound by the acts of his agent, within the authority he has actually given him, which includes not only the precise act expressly authorized to be done, but also whatever usually belongs to the doing of it, or is necessary to its performance. Beyond that he is liable for the acts of the agent, within the appearance of the authority he knowingly permits the agent to assume, or holds the agent out to the public as having." Law v. Stokes, 32 N. J. L. (3 Vroom) 249 (2), (90 Am. D. 655). The defendant had held out Huggins in such a manner as to lead the plaintiff who had been dealing with him to believe that he had authority to deliver and to receive payment for the goods which it sold, and therefore the defendant can not now assert his lack of actual authority; because "the authority of an agent need not necessarily be proved by an express contract, but may be proved by the habit and course of business of the principal. If a man holds out another as his agent, and thus induces persons to deal with him as agent, the principal is estopped, as to such third parties, from denying the agency." Brooks v. Jameson, 55 Mo. 505. See also Story on Agency (8th ed.), §§ 87, 95; Mechem on Agency, § 84; *Johnson* v. *Waxelbaum Co.,* 1 *Ga. App.* 51 (3), (58 S. E. 56); *Luckie* v. *Johnson,* 89 *Ga.* 321 (15 S. E. 459).

2. The defendant contends, that the court erred in admitting in evidence the letter dated March 10, 1906, from the plaintiff to the defendant, on the ground that under the evidence of both parties, the contract was broken, if at all, on January 1, 1906, and the rights of the parties became fixed as of that date; that if Huggins was authorized to act, his refusal to deliver the meal demanded was a breach by the defendant, and that if Huggins was not authorized to act, the plaintiff was guilty of a breach in not making a legal demand and tender within the time prescribed

by the contract. This contention is not sound, for the following reasons. In the first place, there was no specific date mentioned in the contract for delivery and payment; the only thing appearing on this point was that the goods were "to be hauled out as early as convenient." We can not say as a matter of law that the expression used meant not later than January 1, 1906. What the parties meant by this expression was a question of fact, to be determined by the jury in the light of all the surrounding circumstances. Under the evidence the jury were authorized to find that the parties meant a later date than January 1, 1906; and under such a finding the letter referred to was relevant and important for the purpose of showing that the plaintiff had demanded performance and that the defendant had refused such demand. Furthermore, the evidence showed that during both January and February, hulls were delivered by the defendant and paid for by the plaintiff at the contract price, though the plaintiff could have purchased the hulls cheaper in the open market; also that the defendant delivered meal and accepted payment therefor at the contract price of $22 per ton, whereas the market price at the time was from $24 to $28 per ton. The witnesses of the plaintiff testified that these deliveries and payments were made in pursuance of the terms of the contract; and while the witness of the defendant denied this, the jury were authorized to find in accordance with the evidence on the part of the plaintiff. Therefore, even if the defendant was right in its contention that the date prescribed by the contract for delivery and payment was not later than January 1, the subsequent conduct of the parties tended to show a mutual temporary disregard of strict compliance with this term of the contract; and the letter objected to was admissible under section 3642 of the Civil Code of 1895, which is as follows: "Where parties, in the course of the execution of a contract, depart from its terms and pay and receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a *quasi* new agreement."

3, 4. The defendant sets forth several excerpts from the charge of the court and complains that they embody expressions of opinion on the facts. When these excerpts are read in connection with

the context and with the charge as a whole, they are not open to objection on the ground stated. *Indiana Fruit Company* v. *Sandlin,* 125 *Ga.* 223 (6), (54 S. E. 65). The defendant does, however, assign error on one portion of the charge which seems to contain an intimation by the judge that the evidence tends to establish a certain fact. This fragment of the charge is contained in the 37th paragraph of the petition for certiorari, and is as follows: "Now I charge you, gentlemen of the jury, that a contract in writing, such as this one, with the name of an individual signed thereto, can be shown to be the contract of his principal, whether that principal be another individual or a corporation. In other words, it is possible to show that that contract was in fact the contract of the Farmers Supply Company. Now evidence has been put before you *tending to show* and for the purpose of showing that was really the case." At the trial the defendant introduced only one witness. As to the fact on which the opinion of the court was intimated, he testified as follows: "Mr. Harris came down to my office and told me he wanted to buy some meal and hulls, and as I understood it he wanted to buy them for the Farmers Supply Company. . . When I made this contract I was dealing with J. H. Harris and the goods were supposed to be for Farmers Supply Company. I knew that at the time. . . I know that he bought these goods from me with the understanding that Farmers Supply Company were to receive the goods." Harris was introduced as a witness by the plaintiff, and he testified that in making the contract he was acting as agent for the Farmers Supply Company. Since, therefore, there was no dispute in the evidence as to this matter, the judge could have properly charged the jury that although the contract was signed by Harris, yet the evidence showed that he was acting as agent for the Farmers Supply Company, and that the contract was really one between the plaintiff and the defendant. In other words, instead of merely intimating that the fact had been proved, he could have charged them positively and unequivocally that it had been proved. *Shields* v. *Ga. Ry. & Elec. Co.,* 1 *Ga. App.* 172 (57 S. E. 980). This being so, the defendant can not complain that the judge only intimated an opinion adverse to its contention, when he could have charged that there was no evidence in support of such contention; for the defendant can not complain of a charge which

is more favorable to it than the evidence justifies. *Moss Mfg. Co.* v. *Carolina Portland Cement Co.,* 1 *Ga. App.* 232 (57 S. E. 914). It was competent to show by parol evidence that the contract nominally that of the agent was in fact that of the principal. Civil Code, §§ 3022, 3039; *Waterlown Engine Co.* v. *Palmer,* 84 *Ga.* 368, and cit. (10 S. E. 969, 20 Am. St. R. 368); Tiffany on Agency, 233.

5. Several assignments of error go to the refusal of the judge to charge in accordance with certain requests submitted in writing by the defendant's counsel. One of these requests was as follows: "Under the law, persons dealing with one who purports to act in behalf of a corporation do so at their own risk as to whether such person is in fact the agent of the corporation and authorized to act for it, or not." The court gave this charge but qualified it as follows: "with this proviso, that they are protected if the agent is held out by the company, or other person, as being the agent empowered to transact such business." It is insisted that the qualification added by the judge was error. Instead of this qualification being error, it kept the charge from being error, because, under the evidence, Huggins had the apparent authority which he assumed to have; and one of the very acts which clothed him with this apparent authority was the holding of him out by the defendant in such a manner as to lead the plaintiff to believe that he had such authority. The request embodied a correct statement, in the abstract, of a general principle of law, but it would have been error to give in charge this abstract principle without the qualification added by the judge. The proviso qualified the abstract principle so as to make it applicable to the evidence in the case.

The defendant further complains of the refusal of the judge to charge in accordance with a written request, as to certain admissions which had been made in the original answer, but which were subsequently withdrawn by an amendment. The request was substantially a correct statement of the law, but the language used would probably have misled the jury. The judge refused to make the charge requested, but in his general charge he covered the law relating to the matter referred to as follows: "Now, with reference to admissions, I charge you this: If a party make an admission against his own interest, then, if it is made in the

form and manner prescribed by law, it is allowed in evidence. If the party make an admission in a plea, either by himself or his attorney, and subsequently amend that pleading and strike it, it can be introduced in evidence as an admission on his part, made either by himself or his attorney. In case it is stricken, and then introduced in evidence, it has the same effect as an admission made in a statement,—that is to say, it goes before the jury, and they can give it such weight and credit in determining the facts and circumstances as they deem it wise to attach to it. Now, under the law, a man has the right, at different stages of the procedure of a suit, to amend his petition by striking out certain things which he has before put in his petition, if the court allows it. If it is stricken out, and the court allows it to be stricken out, he is not then bound by it, but it can be introduced as an admission to go before the jury to be given such weight and credit as a fact and circumstance as they deem wise." This charge correctly states the law as to admissions made by pleadings. *Alabama Midland Ry. Co.* v. *Guilford,* 114 *Ga.* 627 (40 S. E. 794) ; 2 Wigmore, Ev. 1250. Where a matter is covered substantially and sufficiently by the general charge, a refusal to charge in the exact language of a written request is not error. *Hawkins* v. *Kermode,* 85 *Ga.* 116 (2), (11 S. E. 560).

6. The demurrer to the petition was properly overruled. No reversible error appears in any of the grounds of certiorari.

*Judgment affirmed.*