Iris María Pereles, representada por su madre con patria potestad Ana Pagán Viuda de Pereles, demandante y apelante, *v.* Ongay Garage & Radio Co., Inc., demandada y apelada.

Núm. 8362.—*Sometido:* Febrero 19, 1942. *Resuelto:* Febrero 24, 1942.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelante; *José C. Jusino,* abogado de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

En la mañana del 30 de diciembre de 1938, la niña Iris María Pereles Pagán, entonces de doce años de edad, se hallaba parada en la acera del edificio "Notre Dame", sito en la parada 5½ de Puerta de Tierra, hablando con otra niña y una señorita. Un automóvil que a la sazón se hallaba estacionado frente a un establecimiento contiguo, propiedad, según se alega en la demanda, de Ongay Garage & Radio Co., Inc, violenta e inesperadamente fué movido hacia atrás, conducido por Juan Emilio Negrón, con tal violencia que sus ruedas traseras subieron a la acera donde se hallaba la niña,

atrapándola entre el automóvil y la pared, causándole con tal motivo graves' daños personales que no precisa describir a los efectos de esta opinión. En reclamación de dichos daños, la perjudicada, representada por su madre con patria potestad Ana María Pagán viuda de Pereles, instó este pleito contra la corporación doméstica Ongay Garage & Radio Co., Inc., alegando que Juan Emilio Negrón era entonces empleado del establecimiento antes mencionado y que al causar el daño actuaba con ocasión de su empleo.

La corte inferior consideró probado que la demandante sufrió graves daños causados por la culpa y negligencia de Juan E. Negrón, pero al exonerar de responsabilidad a la demandada, dijo:

"Aunque pudiera concluirse (sin que lo resolvamos) que el taller o puesto de reparar baterías a que se refieren los testigos de este caso era de la propiedad de la demandada y que ésta lo explotaba a través de Asunción Díaz, no se demostró suficientemente, sin embargo, que Juan E. Negrón, la persona que causó el accidente, estuviera en el empleo de la demandada o actuando para o por cuenta de aquélla."

No estamos tan convencidos como parece estarlo la corte inferior de que la evidencia no demuestra suficientemente que al realizar el acto negligente que causó el daño no estuviese actuando para o por cuenta del taller que alega la demandante pertenece a la demandada. Pero como la responsabilidad de la demandada depende en último término de que el taller se explotase por Asunción Díaz, no como arrendatario como alegó la demandada, sino como empleado de aquélla, invertiremos el orden que siguió la corte inferior en la resolución de este caso, para determinar primero si Asunción Díaz era el arrendatario del taller o si por el contrario actuaba como un mero empleado de la demandada, ya que de ser Díaz el dueño del negocio no sería preciso determinar si Negrón era o no empleado del taller o si con el consentimiento de Díaz trabajaba en beneficio de éste, pues en todo caso la demandada estaría exenta de responsabilidad.

■■ La demandada alegó en su contestación a la demanda que había sido dueña del taller en cuestión, pero que antes de ocurrir el accidente lo había arrendado a su antiguo empleado Asunción Díaz, sin que desde entonces la demandada tuviese intervención alguna en la dirección y administración de dicho establecimiento, todo lo cual incumbía a Asunción Díaz como único interesado en el mismo.

La demandante presentó evidencia tendente a demostrar que no obstante el alegado arrendamiento, la demandada hasta después del accidente, continuaba pagando a su nombre la corriente eléctrica consumida en el taller, así como también el canon de arrendamiento de la casa; que en la guía telefónica aparecía anunciado el taller como perteneciente a la demandada, y que el taller no pagaba patente municipal a virtud de la exención de contribuciones concedida a la demandada.

La demandada presentó en evidencia y fué admitida sin oposición la escritura número 39, otorgada en San Juan, el 25 de noviembre de 1938, ante el notario Ernesto Juan Fonfrías, por la cual aquélla arrendó el taller en cuestión a Asunción Díaz por el término de un año a partir del primero de noviembre de 1938 y canon de $5 semanales, acordándose, entre otras, las siguientes condiciones: que la arrendadora se obligaba a pagar la corriente eléctrica consumida en el taller y continuaría pagando a su nombre el canon de arrendamiento del local, comprometiéndose a su vez el arrendatario a devolver a la arrendadora dichos desembolsos el día último de cada mes.

En su alegato la apelante no niega la existencia del contrato de arrendamiento, pero alega que a pesar del mismo, la demandada responde de la actuación negligente de Juan Emilio Negrón, e inmediatamente expone: "Esta contención se funda en la doctrina de *ostensible agency or agency by estoppel.*" Correctamente dice la representación de la apelante que la doctrina de ostensible agency está predicada en el *estoppel,* y cita un gran número de casos en que dicha

doctrina ha sido aplicada, en todos los cuales ha existido el elemento de estoppel.

Al invocar esta doctrina, la representación de la apelante parece no haber tenido en cuenta que para que pueda invocarse con éxito el estoppel, es indispensable que los· actos, conducta o manifestaciones de aquél contra quien se invoque hayan inducido al que lo invoca a variar su posición y a actuar a su perjuicio como consecuencia de tales actos, conducta o manifestaciones. *Railroad Company* v. *Dubois,* 79 U.S. 47; *Jones* v. *U. S.,* 96 U.S. 24, 29; *Arizona* v. *Copper Queen Mining Co.,* 233 U.S. 87, 95; *Ashwander et al.* v. *Tennessee Valley Authority et al.,* 297 U.S. 288, 322; *Deitrick* v. *Greaney,* 309 U.S. 190, 197.

En el caso de autos, no existe posibilidad alguna de aplicar la doctrina de estoppel, pues los actos de la demandada a que antes hemos hecho referencia, aparte de que no se ha demostrado que la demandante los conociese, en ninguna forma pudieron influir en la realización del acto torticero. La demandante no pudo en forma alguna ser inducida a pararse en la acera del edificio Notre Dame por el hecho de que el taller en cuestión perteneciese a Ongay Garage & Radio Co. Inc., o a cualquier otra persona.

No vamos a discutir la lista interminable de casos citados por la apelante, en los cuales se aplicó la doctrina de ostensible agency. Sólo vamos a ocuparnos de dos de ellos, en los cuales pone gran énfasis la apelante. El primero es el de *Lynch* v. *Robe,* 59 N.Y.S. 109, cuyos hechos, según la representación de la apelante, son muy parecidos a los del de autos. En dicho caso se hace la siguiente cita:

"Cuando un demandado abre una sucursal de su negocio y encarga de ella a una tercera persona, quien conduce el negocio a nombre del demandado y se hace pasar por éste, y luego compra cierta propiedad para usarla en el negocio, a nombre del demandado, éste es responsable del precio si dicha tercera persona era su agente general, aunque la compra se hubiese verificado después de la revocación del mandato, cuando no se dió aviso alguno de la revocación."

De la mera exposición de los hechos contenidos en el párrafo anteriormente transcrito surge claramente que el vendedor de la propiedad había sido inducido a creer que la venta la hacía al demandado, y aunque el mandato había sido revocado antes de efectuarse el negocio, de esa revocación no había sido notificado el demandante, quien por el conocimiento anterior que tenía de las relaciones entre el demandado y el agente, podía creer que dicha relación de mandante y mandatario subsistía al tiempo de verificar la venta.

El otro caso, el de *Rhone* v. *Try Me Cab Co. et al.,* 65 F. (2d) 834, fácilmente puede distinguirse del de autos. En aquél se trataba de una reclamación de daños sufridos por una señora que contrató los servicios de un *taxi* que por varias circunstancias que no es preciso exponer, aparecía públicamente como de la propiedad de la compañía demandada, cuando en realidad no lo era. La demandante en ese caso indudablemente pudo ser inducida a creer, por las circunstancias antes aludidas, que el taxi pertenecía a la compañía demandada, y ya fuese por el buen nombre, el crédito o cualquier otra cualidad de la demandada, disponerse a hacer negocios con ella contratando uno de sus vehículos. De manera, pues, que la doctrina de estoppel pudo alegarse con éxito.

Lo mismo puede decirse con respecto a los casos de esta jurisdicción citados por la apelante, *Sucesores de Esmoris & Co.* v. *D. S. Stern & Co.,* 29 D.P.R. 640, y *Torres* v. *P. R. Racing Corporation,* 40 D.P.R. 441.

De la prueba que presentó la demandante al efecto de que la demandada pagaba el canon de arrendamiento del local, la corriente eléctrica consumida en el taller, etc., surgió la inferencia de que la relación entre Ongay Garage & Radio Co., Inc., y Asunción Díaz era la de patrono y empleado, y en ausencia de prueba por parte de la demandada, hubiese sido suficiente para sostener un pronunciamiento al efecto de que Asunción Díaz era un empleado de la demandada. *Hozian* v. *Crucible Steel Casting Co.,* (1937,

Ohio), 112 A.L.R. 333, y monografía en el mismo tomo, página 337. Véase también *Sánchez* v. *Asiatic Petroleum Co.*, 40 D.P.R. 104. Pero esa inferencia fué destruída por la escritura de arrendamiento, donde aparece con toda claridad por qué y en qué condiciones la demandada realizaba aquellos actos, que de no ser explicados por su prueba, hubiesen sido suficientes para sostener la contención de la apelante al efecto de que el taller era explotado por la demandada a través de Asunción Díaz como empleado.

Siendo Asunción Díaz el arrendatario del taller, no es responsable la demandada de los actos de los empleados de aquél, y por consiguiente es innecesario entrar a considerar si Díaz es o no responsable de los actos de Negrón.

*Por lo expuesto, procede confirmar la sentencia apelada.*