HERMINIO BERRÍOS PAGÁN, ETC., demandantes y recurrentes, *v.* UNIVERSIDAD DE PUERTO RICO, DEPARTAMENTO DE SALUD DE PUERTO RICO, ETC., demandados y recurridos.

*Número:* R-83-529          *Resuelto:* 24 de enero de 1985

*Francisco Vincenty Gronau,* abogado de los recurrentes; *Isabel López Bras, Luis Benjamín Méndez, Eliezer Aldarondo Ortiz,* de *Aldarondo & López Bras,* abogados del recurrido Municipio de Corozal.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Previene Soto Nieto, que el "Juez no puede limitarse a un 'ir tirando' en su función resolutoria, incorporándose trabajosamente a los asuntos; al contrario, debe comprometer su actuación al resultado de una meditación seria, honesta, sincera, para que sus decisiones no se vean sorprendidas por una fácil improvisación que dé al traste con ese refinamiento moral que debe ser tónica del buen Juez. Medite, remedite, vuelva a medi-

tar, dé tiempo para que las ideas, los sentimientos éticos, vayan posándose en su espíritu y estratificándose según peso y densidad". (Escolio omitido.) F. Soto Nieto, *Compromiso de Justicia*, Madrid, Ed. Montecorvo, 1977, pág. 21.

El trasfondo procesal de este recurso pone a prueba la esencia de nuestro sistema de justicia. Induce a su vez a la reflexión sobre las perspectivas que orientan el quehacer judicial. Es imperativo alertar que el deber de lealtad del abogado a la justicia y a la verdad no es menor que la debida a su cliente. Ambas fidelidades deben armonizarse. La conducta de un abogado no debe obstaculizar la función adjudicativa de un tribunal so pretexto de promover los intereses de su cliente. El éxito de su representación no puede descansar en "habilidades o destrezas técnicas" que burlan elementales principios de justicia. La gestión profesional del abogado durante todo el proceso judicial tiene que estar a la altura de su encomienda como auxiliar y colaborador de nuestros tribunales de justicia. Como elemento indispensable en la búsqueda de la verdad, su conducta debe ser franca y honesta. Su proceder, no puede apartarse de la buena fe y el trato justo al adversario sin exponer a su cliente a las consecuencias legales de tal omisión. "A nuestro modo de ver, el deber de decir la verdad existe, porque es un deber de conducta humana. Pero lo que el proceso requiere no es solamente la verdad formal; requiere la lealtad, el juego limpio y no el subterfugio." E. J. Couture, *Estudios de Derecho Procesal Civil*, 2da ed., Buenos Aires, Ed. Depalma, 1978, Vol. III, pág. 253. Nuestro sistema adversativo tiene límites, la justicia le sirve de norte y la ética como principio rector lo circunscribe a fines superiores sobre los cuales descansa nuestra convivencia.

I

*Trasfondo e incidentes procesales*

Herminio Berríos Pagán y Gloria Martínez, en unión a Guillermo Martínez presentaron demanda el 17 de febrero de

1976 contra la Universidad de Puerto Rico, Departamento de Salud, Puerto Rico Medical Center y el Municipio de Corozal. En síntesis alegaron que la negligencia de dichas entidades en el tratamiento médico causó la muerte del menor Henry Berríos Martínez el 30 de mayo de 1975.

Posteriormente, enmendaron la demanda e incorporaron en el epígrafe al "Estado Libre Asociado representado por el Departamento de Salud". La U.P.R. solicitó la desestimación a base de que carecía de vínculo alguno con la administración de las instituciones hospitalarias mencionadas en la demanda. Adujo que Puerto Rico Medical Center administraba el Centro Médico. Los demandantes se allanaron. Entonces el Departamento de Salud compareció y alegó que no tiene capacidad jurídica para demandar y ser demandado. Se desestimó la demanda contra esta parte. Después Puerto Rico Medical Center compareció y también pidió la desestimación. Alegó que no administraba ninguna institución médica relacionada con los hechos alegados en la demanda. En esta etapa los demandantes se oponen y advierten con preocupación: "[e]n vista de esta situación y para que se pueda hacer verdadera justicia, lo procedente es citar a una vista . . . para que éstos diluciden y aclaren la situación y se pueda establecer cuál de estas instituciones fue la que prestó los servicios al menor Henry Berríos Martínez". Moción en oposición a la sentencia sumaria, fechada 28 de abril de 1977.

Ese remedio no fue concedido. El tribunal de instancia accedió a la desestimación formulada por Puerto Rico Medical Center.

En esta etapa procesal sólo quedaban como demandados el E.L.A. y el Municipio de Corozal. Para una inteligente comprensión del resultado más adelante expuesto, en lo pertinente a la evaluación de la conducta de estas dos partes, es imprescindible dar marcha atrás y reproducir el párrafo séptimo de la demanda original, inalterado en la enmienda:

SEPTIMO: Que el día 12 de agosto de 1975 se notificó al Honorable Alcalde del Municipio de Corozal, Puerto Rico, sobre esta reclamación, tal como lo dispone la Ley, mediante correo certificado, según el acuse número 677637, *ya que el Municipio de Corozal es la entidad que opera u operaba el Centro de Corozal para la fecha en que ocurrieron dichos hechos y como tal se responsabiliza de los daños causados,* así como también en dicha fecha del 12 de agosto de 1975, y mediante carta certificada con acuse de recibo número 677–609 se notificó al ESTADO LIBRE ASOCIADO DE PUERTO RICO, cumpliendo con lo dispuesto por la Ley. (Énfasis suplido.)

El 26 de mayo de 1976 había comparecido el municipio representado por el Departamento de Justicia, y solicitó y obtuvo una prórroga:

Que para poder contestar juiciosa y responsablemente la presente demanda estamos realizando las gestiones necesarias con las agencias y/o instrumentalidades del Gobierno pertinentes, las cuales nos deberán someter dentro de los próximos días la información necesaria para hacer algún tipo de alegación responsiva en este caso.

No obstante lo anterior, el municipio contestó la demanda original el 18 de junio y curiosamente, su alegación responsiva al párrafo séptimo de la demanda expresó: "Se acepta que se hizo la notificación al Municipio. Se niega el resto del párrafo por falta de información y/o conocimiento."

Por su parte, el E.L.A. compareció dos años después de ser notificado y emplazado con la demanda enmendada. Pidió prórroga para contestar, pues "le es indispensable obtener cierta información para presentar su contestación a la demanda *en forma responsable*". (Énfasis suplido.) Finalmente, contestó que "el párrafo séptimo se admite". Alegó que la reclamación estaba prescrita. En el interín, el Municipio de Corozal, representado por un abogado privado, contestó la demanda enmendada y adoptó por referencia "las alegaciones contenidas en la contestación a la demanda suscrita por el Estado Libre Asociado".

El caso se ventiló en sus méritos. El tribunal desestimó, por prescripción, la acción contra el E.L.A. y la del municipio, por carecer éste de control o ingerencia en la administración del hospital situado dentro de los límites de su jurisdicción. Según la prueba, salió a relucir que el Departamento de Salud había transferido, en virtud de contrato firmado el 1ro de enero de 1975, la operación y administración del referido hospital a "la Corporación de Servicios de Salud del Área de Barranquitas, Comerío, Corozal, Naranjito y Orocovis, Inc." Entendió además el tribunal que no se demostró negligencia contra ninguna de estas entidades.

Acordamos revisar.

## II

*Responsabilidad del municipio*

■ Todo proceso adjudicativo se orienta en hallar la verdad y hacer justicia. *J.R.T.* v. *Aut. de Comunicaciones*, 110 D.P.R. 879, 884 (1981). Nuestra función es darle vigencia a la norma conforme a este elemento teleológico en su aplicación a casos concretos. *García Negrón* v. *Tribunal Superior*, 104 D.P.R. 727, 729 (1976).

■ Nuestra doctrina jurisprudencial continúa avanzando hacia esa meta. Interpretando las Reglas 6.2 y 6.4 de Procedimiento Civil —que regulan los modos de negar— hemos resuelto que un demandado no puede fundar su negativa al contestar una demanda en "falta de conocimiento o información suficiente", si el hecho contenido en la alegación a negarse es de conocimiento público o de fácil comprobación. Los abogados deben tener especial cuidado al formular sus alegaciones de no negar hechos que le consten o que pueden verificar fácilmente. *P.R. Amr. Ins. Co.* v. *Tribunal Superior*, 100 D.P.R. 747, 749 (1972). Cuando le consta, o pudiendo comprobarlo —como en el presente caso— se niega en la forma que se hizo, procede no considerar la contestación y dar lo así negado por admitido.

*Montero Saldaña* v. *Amer. Motors Corp.*, 107 D.P.R. 452, 457, 458 (1978) expone claramente la razón de este enfoque:

> . . . Y es que la contestación a una demanda impone al abogado el deber de actuar franca y sinceramente, y de alegar honesta, directa y abiertamente. No se le requiere que la contestación sea jurada, pero esa misma dispensa impone al abogado mayor responsabilidad. Lo que aparezca bajo su firma debe ser la verdad. La negación por falta de información y creencia debe limitarse estrictamente a las situaciones en que en verdad así sea.

En causas de demandados múltiples, los abogados deben ser extremadamente cuidadosos y específicos en cuanto al lenguaje de las posiciones adoptadas por sus respectivos representados y sus admisiones o defensas, particularmente en cuanto a hechos esenciales. *Briales Aldrich* v. *Torres*, 89 D.P.R. 815, 819 (1964). Una alegación esencial queda admitida cuando el demandado no controvierte dicha alegación en su contestación a la demanda. *Pascual* v. *Fernández Sierra*, 108 D.P.R. 426, 430 (1979). Hemos repudiado en la etapa del descubrimiento de prueba los "más sutiles intentos de acosar u obstruir al oponente, como darle respuestas inadecuadas". *Ades* v. *Zalman*, 115 D.P.R. 514, 523 (1984).

En el caso de autos, el Municipio de Corozal no podía negar por falta de información y conocimiento que no administraba el referido centro de salud. Era un hecho que le constaba de su propio y directo conocimiento. Que no supiera quién lo admistraba es otra cosa. Eso no lo requería la alegación.[1] Su respuesta tenía que ser específica, clara y

---

[1] En modo alguno nuestras expresiones deben estimarse como censurables de la conducta, en la dimensión ética, de cualesquiera de los distintos abogados que participaron en las diversas etapas del proceso.

No estamos imponiendo obligación a un demandado de proveer información a un demandante para proteger su causa de acción. *Galarza* v. *G. Llinás & Co.*, 71 D.P.R. 111, 117 (1950). Nuestro dictamen debe estimarse en lo referente a que una negación de hechos sustanciales no puede estar predicada en evasivas u ocultaciones que frustren la causa de acción de una parte.

abierta y dejar saber si administraba o no el centro según se alegaba en la demanda. La prueba que presentó en la vista en su fondo seis (6) años después —nóminas municipales— siempre estuvo bajo su control. Aún así, prefirió el silencio con las consecuencias que hoy atribuimos a su conducta. Más aún, al incorporar a su contestación por vía de referencia las alegaciones presentadas por el E.L.A., el municipio aceptó que administraba el centro, sentando las bases que apoyan la conclusión de su responsabilidad. Esta situación se agrava por la omisión del tribunal de instancia de no ordenar la celebración de una vista conforme lo solicitaron los demandantes, a los fines de que las partes clarificasen sus contestaciones, u ordenar una réplica contra una contestación de parte específica o resolver cualquier ambigüedad existente y definir con nitidez la cuestión litigiosa. *Cía. de Desarrollo Comer.* v. *American Fruits*, 104 D.P.R. 90, 94 (1975).

■ Las actuaciones procesales y extrajudiciales del Estado Libre Asociado y el Municipio de Corozal son en extremo graves. En todo momento proyectaron y se revistieron de una *autoridad y control* sobre el centro médico local e indujeron a los demandantes una creencia razonable de tal representación, configurada mediante el silencio, evasivas y apariencias. Coincidimos con los recurrentes en que a las personas que utilizaron los servicios del Centro de Salud de Corozal les era casi imposible saber, y no tenían forma de conocer, que estaban actuando ante otra entidad que no fuera la municipal o estatal. Todos los signos externos y aparentes así lo indicaban: ambulancias, nombre del edificio y documentos. La corporación que en propiedad administraba el centro de salud no hizo su aparición ante los parientes y familiares. Nunca se materializó. Ni siquiera los records médicos contienen o demuestran el nombre de la supuesta corporación.

En estas circunstancias, se justifica imponer responsabilidad al municipio. Su conducta intencional y concurrente pro-

pició la creencia de que quienes operaban y administraban el centro de salud lo hacían en calidad de agentes en el ámbito de su autoridad. *Pereles* v. *Ongay Garage & Radio Co.*, 60 D.P.R. 8 (1942). ([2]) Rechazamos esa práctica forense. "El proceso no es una red para que el adversario caiga en ella, ni una embos-

---

([2]) La tendencia norteamericana es imponer esa responsabilidad bajo la doctrina de la "autoridad aparente". Según la misma, si una parte expresa o implícitamente hace creer que otro es su sirviente o agente, puede ser responsable por los actos negligentes de aquél hasta la extensión de dicha representación o creencia. A este resultado también puede llegarse aun cuando la parte negligente sea un contratista independiente o no haya relación patronal alguna entre el actor negligente y la parte que realiza la representación. Basta que quien intente probar la autoridad aparente de una persona demuestre: (1) que de buena fe confió en la conducta que tenía ante sí; y (2) que esa confianza lleve a una persona razonable a creer que de hecho existía una relación de principal y agente. Se enfatiza que el principal permite al "agente" asumir la representación con conocimiento del hecho de la apariencia de autoridad. Se considera que debe existir una notificación mínima, en alguna forma, que alerte a la persona que se enfrenta a tal situación, de que la misma no existe en realidad. W. R. Prosser, J. W. Wade y V. E. Schwartz, *Cases and Materials on Torts*, 7ma ed., Mineola, New York, The Foundation Press, 1982, pág. 699; *Stewart* v. *Midani*, 525 F. Supp. 843, 850–853 (1981); 2 Restatement of Torts 2d Sec. 429; 1 Restatement of Agency 2d Sec. 267; *Mehlman* v. *Powell*, 378 A.2d 1121, 1124 (1977); *Luckie* v. *Johnson*, 89 Ga. 321, 15 S.E. 459 (1892); *Fitzgerald Cotton Oil Co.* v. *Farmer's Supply Co.*, 3 Ga. App. 212, 215, 59 S.E. 713 (1907); *Hill* v. *Citizens Nat. Trust & Savings Bank*, 9 Cal. 2d 172, 69 P.2d 853 (1937); *Folsom* v. *Miller*, 102 Ga. App. 232, 234, 116 S.E.2d 1 (1960); *Arthur* v. *St. Peter's Hospital*, 169 N.J. Super. 575, 405 A.2d 443, 447 (1979); *Mduba* v. *Benedictine Hospital*, 52 A.D.2d 450, 384 N.Y.S.2d 527 (Sup. Ct. 1976); *Interstate Financial Corporation* v. *Appel*, 134 Ga. App. 407, 411, 215 S.E.2d 19 (1975); *Howard* v. *Park*, 37 Mich. App. 496, 195 N.W.2d 39 (1972); *Stanhope* v. *Los Angeles College of Chiropractic*, 54 Cal. App. 2d Supp. 141, 128 P.2d 705, 708 (Cal. 1942).

La doctrina de la autoridad aparente está arraigada en los principios del impedimento colateral (*estoppel*). *Pereles* v. *Ongay Garage & Radio Co.*, 60 D.P.R. 8, 10–12 (1942); *Interstate Financial Corporation* v. *Appel*, supra, pág. 411; *Fitzgerald Cotton Oil Co.* v. *Farmer's Supply Co.*, supra, pág. 215; *Folsom* v. *Miller*, supra; *Stewart* v. *Midani*, supra, págs. 850–851. El principal está impedido de negar frente a un tercero, bajo tales circunstancias, que no existe en la realidad una relación de "agencia" (*ostensible agency*). La doctrina de los actos propios tiene algunas tangencias con la teoría del *estoppel*, aunque existen diferencias en su desarrollo y contenido. *Lausell Marxuach* v. *Díaz de Yáñez*, 103 D.P.R. 533, 537 (1975). " 'Estoppel' significa etimológicamente estorbo, impedimento, obstáculo, detención." *Int. General Electric* v. *Concrete Builders*, 104 D.P.R. 871, 877 n. 6 (1976).

cada para sustraer del debate la natural exposición de los hechos y del derecho." Couture, *op. cit.*, pág. 253.

Los preceptos que se refieren a la buena fe en el sentido de conceder protección a la confianza en una apariencia jurídica, parten de la premisa de una creencia en que la otra parte —la que realiza el acto de disposición— ostenta una legitimación que en realidad carece. J. Puig Brutau, *Introducción al Derecho Civil*, Barcelona, Ed. Bosch, 1981, págs. 417–418.

■ La frase "buena fe", como norma interpretativa, significa confianza, seguridad y honorabilidad basada en ella. La palabra "fe", fidelidad, quiere decir que una de las partes se entrega confiadamente a la conducta "leal" de la otra. *Comentarios a las reformas del Código Civil*, Madrid, Ed. Tecnos, 1977, Vol. I, pág. 368. La actuación contraria a los propios actos del titular es uno de los supuestos típicos del ejercicio de derechos subjetivos en contravención al principio de la buena fe. Puig Brutau, *op. cit.*, págs. 418–419.

■ En nuestra jurisdicción es aceptable la norma de que bajo circunstancias apropiadas, un demandante pueda invocar contra el Estado la doctrina de los actos propios, impedimento en equidad y de la buena fe. Véase *Figueroa Cancel* v. *E.L.A.*, 114 D.P.R. 684 (1983) [3] y autoridades allí citadas. Aquí se cumplió con el requisito de probar la mala fe. *Cervecería Corona* v. *Commonwealth Ins. Co.*, 115 D.P.R. 345 (1984). También se satisficieron los elementos constitutivos de la norma de que nadie puede ir contra sus propios actos. *Int. General Electric* v. *Concrete Builders*, 104 D.P.R. 871, 878

---

[3] Estos principios tienen profunda raigambre en nuestro ordenamiento jurídico. Su origen es casi centenario. Nuestra Ley de Evidencia de 9 de marzo de 1905 disponía en su Art. 101, inciso 3, lo siguiente:

"Siempre que una de las partes hubiere, por su propia declaración, acto ú omisión, inducido intencional ó deliberadamente á otra de las partes, á creer en la verdad de una cosa y obrar en esa creencia, no se podrá en ningún litigio á que diere lugar dicha declaración, acto ú omisión, permitir á aquella que la refute."

(1976). Susceptibles de la sanción que hoy imponemos son, lo mismo las personas individuales y naturales, que las colectivas y jurídicas. *Serra, Garabis & Co., Inc.* v. *Municipio,* 42 D.P.R. 468, 485 (1931); *García Colón* v. *Srio. de Hacienda,* 99 D.P.R. 779, 783–786 (1971). Rehusamos las normas e interpretaciones que conduzcan a un resultado contrario a la buena fe. *Comentarios a las Reformas del Código Civil, op. cit.,* pág. 366. Reafirmamos que "[e]l *contenido de eticidad de cada acto deberá examinarse a la luz de sus circunstancias particulares,* pero el comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica". (Énfasis suplido.) *Velilla* v. *Pueblo Supermarkets, Inc.,* 111 D.P.R. 585, 588 (1981).

La responsabilidad del Municipio de Corozal dimana de sus propios actos.

## III

*Negligencia en el tratamiento médico*

Aclarado que en nuestra jurisdicción "debe considerarse vigente en cada Código procesal, un principio o un mandamiento histórico que impone el deber de decir la verdad y rechace el proceso instituido a expensas de la mentira", Couture, *op. cit.,* pág. 251, analicemos el aspecto de negligencia y causalidad.

La exposición narrativa de la prueba establece incontrovertidamente que para el mes de mayo de 1975 el infante Heriberto Berríos Martínez —de trece (13) meses de edad— fue atendido en el Centro de Salud del Municipio de Corozal. Presentaba un cuadro de síndrome viral y una sintomatología de diarreas, vómitos y fiebre alta. Durante tres días consecutivos fue atendido y, aun cuando no presentaba mejoría, era devuelto a su hogar. El día 29 de mayo de 1975, ante un cuadro de emergencia, luego de ser inyectado, al decir de su madre la señora Martínez Rivera, se le "brotaron los ojos". Por solicitud de ella fue referido al Hospital Ruiz Soler de Bayamón. Allí

llegaron a las 2:45 A.M. Se le atendió practicándosele varias pruebas de laboratorio. Los records médicos son prácticamente ininteligibles. Aun así hemos podido apreciar que en dicho hospital se determinó que la condición del niño era grave. Estaba deshidratado. Le pusieron suero y estuvo en camilla donde su madre lo vigilaba. Esa madrugada, el doctor de turno, estimó que el niño estaba mejor y con el suero aún puesto optó por devolverlo al Centro de Salud del Municipio de Corozal. Declaró su madre que recibió instrucciones verbales de informar en el centro que retuvieran al niño para observación y continuaran suministrándole suero. De Bayamón, el niño fue trasladado en una ambulancia. Continuó recibiendo el suero durante el trayecto. Inexplicable y lamentablemente, en el centro de salud una enfermera le removió el suero, a pesar de las protestas de sus padres. Envió el niño a su casa. Horas después Heriberto murió asfixiado por aspiración de contenido gástrico y como causa contributiva gastroenteritis con deshidratación severa. La madre del niño describió que lo encontró en su cuna "explotao".

El codemandado Municipio de Corozal no controvirtió esta prueba aun cuando había anunciado en la conferencia con antelación al juicio como testigos a los doctores y enfermeras que intervinieron al menor. Estos no comparecieron. Sólo presentaron a un oficial de nóminas para establecer que no ejercía control sobre la administración del referido centro.

█ Los *records* médicos, (⁴) y el protocolo de autopsia confieren al testimonio de la demandante, señora Martínez Rivera, garantía de confiabilidad. *García* v. *A.F.F.*, 103 D.P.R. 356, 358 (1975). Esa prueba en las circunstancias del caso es satisfactoria y produce en nuestro ánimo y conciencia certeza y convicción moral. Reiteramos que "[e]n muy raras ocasiones es posible determinar un hecho con certeza o exacti-

---

(⁴) Pudimos leer, aun con las dificultades que presentan por sus deficiencias, las anotaciones que confirman la gravedad de la condición del paciente.

tud matemática. Exigir ese tipo de prueba a un litigante equivaldría prácticamente a requerirle un imposible. Por ello, la ley y la jurisprudencia se limitan a requerir que los casos se prueben por preponderancia de prueba, que es tanto como establecer como hechos probados aquellos que con mayores probabilidades ocurrieron. . . . No es necesario probar un hecho con exactitud matemática. . . . El demandante en una acción civil no está obligado a probar un caso más allá de duda razonable. Tampoco se le exige, en casos de responsabilidad por culpa o negligencia, excluir toda otra posible causa de daños". (Citas omitidas.) *Zambrana* v. *Hospital Santo Asilo de Damas*, 109 D.P.R. 517, 521 (1980).

La condición del paciente, en extremo cuidado de salud, unido a la fragilidad de su edad, requerían el mayor grado de cuidado y circunspección en su tratamiento. Ciertamente, el quitar el suero y enviarlo a su hogar, sin hospitalizarlo, es conducta que se aparta de las normas prevalecientes aceptables sobre cuidado y atención en la medicina. *Núñez* v. *Cintrón*, 115 D.P.R. 598 (1984); *Oliveros* v. *Abréu*, 101 D.P.R. 209, 230 (1973). El proceder de la enfermera de decidir cuándo el niño debía abandonar el centro viola normas elementales de prudencia y cuidado. Reiteramos que las enfermeras no pueden adjudicarse facultades que no les confiere la ley, su cargo, ni su deber. *Núñez* v. *Cintrón*, supra. La sintomatología del niño aconsejaba retenerlo para evaluación y tratamiento inmediato e ininterrumpido. Aunque limitados, el centro tenía los recursos adecuados para atenderlo de surgir alguna complicación. El daño era previsible y pudo razonablemente haber sido evitado. *Hernández* v. *La Capital*, 81 D.P.R. 1031, 1037, 1038 (1960). La negligencia del Municipio de Corozal fue probada.([5]) *Núñez* v. *Cintrón*, supra; *Soc. de Gananciales, Etc.* v. *Presbyterian Hosp.*, 88 D.P.R. 391, 401 (1963).

---

([5]) Este dictamen en nada prejuzga cualquier acción que el Municipio de Corozal estime puede ejercitar en derecho contra cualesquiera de las partes originales o entidades sobre las cuales carecemos de jurisdicción.

*Se dictará sentencia que revoque la del tribunal de instancia y ordene la ventilación de daños.*

El Juez Presidente Señor Trías Monge concurre en el resultado sin opinión. El Juez Asociado Señor Rebollo López disiente sin opinión.