ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| LUIS COLLAZO TORRES, Recurrente, v. DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN, Recurrida. | KLRA202500066 | REVISIÓN procedente del Departamento de Corrección y Rehabilitación. Núm. querella.: 215-24-086. Sobre: Código 109, 110, 126, 148, 220. |

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 20 de marzo de 2025.

El recurrente, Luis Collazo Torres (señor Collazo Torres), incoó el presente recurso de revisión el 29 de enero de 2025, y solicitó la revocación de la *Resolución* emitida el 26 de septiembre de 2025. Mediante esta, el Departamento de Corrección y Rehabilitación encontró incurso al recurrente por infringir los Códigos 110 (uso de tecnologías de información) y 126 (amenaza) de la Regla 15 del Reglamento Núm. 9221 (Reglamento Núm. 9221)[1].

Por los fundamentos que expresamos a continuación, este Tribunal revoca la determinación recurrida.

I

El 20 de julio de 2024, el teniente Joel Loubriel Rosado (teniente Loubriel Rosado) instó la Querella Núm. 215-24-086[2]. En ella, sostuvo que, el 20 de julio de 2024, había recibido una amenaza a través de un mensaje al "inbox" de la red social Facebook[3]. Indicó que, luego de leer el mensaje,

---

[1] Reglamento Núm. 9221 de 8 de octubre de 2020, conocido como *Reglamento para establecer el procedimiento disciplinario de la población correccional.*

[2] *Véase*, apéndice del recurso, a la pág. 15.

[3] El mensaje en cuestión leía como sigue: "Sigue jodiendo que te voy a partir el cuello deja la presión." *Véase*, apéndice del recurso, a la pág. 19.

revisó el perfil de la persona y observó que la fotografía que aparecía en el perfil era la del señor Collazo Torres. Ante ello, le imputó al recurrente haber violentado los Códigos 109[4], 110, 126, 148[5] y 220[6] del Reglamento Núm. 9221. El teniente Loubriel Rosado adjuntó a su querella una fotocopia de los mensajes recibidos.

Posteriormente, se llevó a cabo la investigación de la querella, la cual se extendió desde el 24 de julio de 2024, hasta el 1 de agosto de 2024.

Como parte de dicha investigación, el 24 de julio de 2024, el señor Collazo Torres prestó una declaración escrita[7]. Allí, adujo que no había manera legal de probar que tuviese alguna participación o responsabilidad en el envío del mensaje, ni con la página de Facebook. Precisó que la única manera en que podía ser vinculado con ello era mediante una comparación de las direcciones de protocolo de internet (*IP address*, por sus siglas en inglés), mediante la cual pudiese determinarse que el mensaje había sido enviado desde un artefacto electrónico con acceso al internet, y que se le hubiese ocupado a él.

Más adelante, el 18 de septiembre de 2024, se celebró la vista disciplinaria ante el Oficial Examinador. A esta compareció el recurrente con su representación legal, y el teniente Loubriel Rosado, quien presentó su declaración. Adicionalmente, se presentó el testimonio del oficial de querella, Nelson A. Rivera Rodríguez.

Por su pertinencia, precisa citar[8] algunas de las porciones de los testimonios vertidos en la vista. Con respecto al teniente Loubriel Rosado, este declaró, lo siguiente:

.        .        .        .        .        .        .        .

---

[4] El Código 109 del Reglamento Núm. 9221 prohíbe la posesión, distribución, uso, venta o introducción de accesorios de teléfonos celulares o equipo de telecomunicaciones. *Véase*, Reglamento Núm. 9221, Regla 15 (109).

[5] Por su parte, el Código 148 del mismo reglamento establece como acto prohibido la posesión de documentos, carta o comunicación clandestina dentro de la institución. *Véase*, Reglamento Núm. 9221, Regla 15 (148).

[6] Mientras tanto, el Reglamento Núm. 9221 prohíbe, en su Código 220, el acto de mentir o dar información falsa. *Véase*, Reglamento Núm. 9221, Regla 15 (220).

[7] *Véase*, apéndice del recurso, a la pág. 16.

[8] Según se desprende de la regrabación de la vista disciplinaria, presentada por la parte recurrida.

A preguntas del representante legal del recurrente:

. . . . . . . .

P: Le pregunto… **¿sería correcto decirle al examinador que antes de ese inbox con el nombre de Luis Collazo Torres, usted… no había tenido ningún altercado con este señor?**

R: **No, en ningún momento.**

. . . . . . . .

P: **Para usted determinar que Luis Collazo Torres fue el que envió… la amenaza en el inbox usted se dejó llevar por una foto de perfil, ¿correcto?**

R: **Correcto**.

. . . . . . . .

P: … ¿qué nombre dice en el perfil de la foto?

R: Sí, dice Rafael Román.

P: Ese no es el nombre de mi representado, ¿correcto?

R: No es el nombre de él, no.

P: Le pregunto… esa foto, **usted sabe... ¿dónde se tomó? ¿Usted puede reconocer… dónde se tomó esa foto y cuándo? En honor a la verdad**.

R: En honor a la verdad, **esa foto es una celda… de unas secciones de institución. Pero, decir el tiempo… cuándo se tomó, el día y hora… no le puedo certificar**.

P: Pero… ¿sería correcto decir que esa no es la celda actual donde se encuentra mi representado? …

R: En honor a la verdad, no es el lugar que está asignado ahora mismo.

. . . . . . . .

P: … **usted no puede asegurar que mi representado fue el que le envió la amenaza, ¿verdad que no?**

R: Bueno **yo no puedo asegurar eso**, pero la foto que sale es la de él.

P: Bien, la foto que sale es la de él. Pero ahora mismo, le pregunto, yo no podría abrir, verdad, con el conocimiento que usted tiene de Facebook, ¿yo no podría abrir una página con el nombre de él y una foto de él, y ser yo el administrador?

R: Bueno sí.

P: Sí, verdad. O sea que… **usted no le podría decir al examinador, que usted tiene certeza, de que este señor fue el que lo amenazó. ¿Verdad que no?**

R: Bueno, volvemos a lo mismo, **no tengo la certeza de que haya sido él**, pero la foto que sale es la de él.

P: Que su querella viene por simplemente por la foto.

R: Bueno, no simplemente por la foto. Hay otros argumentos que puedo… expresar... esta es la segunda amenaza de muerte que yo tengo en esta institución.

.        .        .        .        .        .        .        .        .

P: Le pregunté primero **si usted había tenido algún altercado con Luis Collazo Torres que es mi representado y usted… dijo que no.**

R: **Nunca lo había tenido**.

.        .        .        .        .        .        .        .        .

P: Le pregunto, dado que ya usted ha recibido amenazas… anteriores, ¿no cabría la posibilidad, de que esas personas que lo amenazaron anteriormente hayan utilizado una foto de mi cliente, para amenazarlo a usted y crear un perfil falso?

R: Bueno estamos especulando…

P: Claro, estoy especulando. Pero **¿no sería correcto decirle al examinador que usted está especulando también de que fue Luis Collazo el que lo amenazó?**

R: Bueno, volvemos, no es que yo esté especulando licenciado... Respetuosamente le debo expresar que, una vez yo, observo la foto que sale en ese perfil, pues rápido identifico que es un confinado de esta institución. **Si fue él o no fue él, a mí no me consta… a mí no me consta**. Pero sí, la foto que sale, que usted la tiene ahí y la puede observar, es la foto de él. Por ende, yo responsablemente, bajo reglamentación, pues hago lo que corresponde… y por eso estamos aquí hoy.

.        .        .        .        .        .        .        .        .

A preguntas del Oficial Examinador:

.        .        .        .        .        .        .        .        .

P: Teniente… a base de la pregunta que le hizo el licenciado, yo le quiero preguntar, cuando usted recibió el mensaje a su inbox, de la red social Facebook y usted ve la foto y usted identifica al confinado, identifica que es… una celda… de la institución, sacó copia de, el documento donde aparecen unas expresiones, y lo hizo parte de la prueba presentada… contra el confinado. Le pregunto, **¿usted... hizo diligencia con los demás supervisores, entiéndase tenientes o sargentos, de la institución Bayamón 501 con el propósito de hacer un registro en la celda del señor querellado?**

R: … eso fue el día 20, si no me equivoco, a las 11:10 pm de la noche, yo estaba en mi residencia cuando recibo ese mensaje, sábado. Yo me reporto a trabajar lunes, y lunes…hago un informe y se lo envió a la teniente Mariela Huertas y al Capitán… López López para que tomaran acción sobre este asunto. **Eventualmente sí se realizó un operativo…**

P: ¿Cuándo?

R: y se ocupó… ¿perdón?

P: ¿Cuándo?

R: La fecha… en estos momentos no la tengo, pero… **se realizó un operativo y se ocupó un teléfono celular en la sección**…

P: Sí pero la celda. La pregunta… es específica. **En la celda asignada al señor querellado Luis Collazo, ¿se ocupó o no se ocupó algún teléfono celular?**

R: **Lo que pasa es que donde vive el caballero Luis Collazo no son celdas… es un área de mínima y son camas una al lado de la otra.**

P: Okay, **pues en la cama… asignada al señor querellado, ¿se ocupó o no se ocupó, eh, celular?**

R: … en honor a la verdad, yo no organicé ese operativo, yo no estaba presente, pero entiendo que no fue en la celda, digo, en la cama de él donde se ocupó ese teléfono celular.

P: **O sea que no se ocupó un teléfono celular en la cama asignada al señor querellado posterior a la fecha del 20 de julio, cuando usted recibe el mensaje a su… inbox de la red social Facebook.**

R: **Entiendo que no porque… si hubiese sido así pues me hubiesen dado conocimiento de que… se hubiese ocupado ese teléfono… en la cama donde él… descansa**.

.            .            .            .            .            .            .            .

A preguntas del representante legal del recurrente, sobre las preguntas realizadas por el Oficial Examinador:

.            .            .            .            .            .            .            .

P: En relación al celular que se ocupó… ¿a usted le informaron que entraron al contenido de ese celular en algún momento y vieron el perfil de él o algo así?

R: No, no, no tengo información sobre eso.

.            .            .            .            .            .            .            .

*Véase*, regrabación de la vista disciplinaria celebrada el 18 de septiembre de 2024. (Énfasis nuestro).

Posteriormente, el 26 de septiembre de 2024, el Oficial Examinador emitió y notificó la *Resolución* recurrida[9], en la que consignó varias determinaciones de hechos y razonó que la evidencia presentada cumplía con el estándar de preponderancia de la prueba para establecer la conexión del señor Collazo Torres con el acto prohibido en el Código 110 del Reglamento Núm. 9221. Precisó que, a través de la fotografía publicada en la red social Facebook, el recurrente revelaba a terceros imágenes que permitían que el público en general tomara conocimiento de su situación de confinamiento.

---

[9] *Véase*, apéndice del recurso, a las págs. 8-12.

Además, concluyó que la amenaza acompañada de la fotografía tenía la intención de causar un daño determinado a la integridad corporal del teniente Loubriel Rosado.

El Oficial Examinador encontró incurso al señor Collazo Torres por los Códigos 110 y 126 del Reglamento Núm. 9221. Consecuentemente, impuso una sanción consistente en la suspensión del privilegio de comisaría, recreación activa, visita, actividades especiales y cualquier otro privilegio concedido, por un periodo de setenta (70) días calendarios.

Insatisfecho, el 1 de octubre de 2024, el señor Collazo Torres presentó una solicitud de reconsideración, que fue recibida por el Departamento de Corrección y Rehabilitación al próximo día[10]. En principio, adujo que no había certeza para vincularlo con la infracción del Código 126 del Reglamento Núm. 9221. Puntualizó que el teniente Loubriel Rosado verbalizó en la vista disciplinaria que: (1) se dejó llevar por la fotografía que aparecía en el perfil de Facebook para determinar que él había sido quien había enviado el mensaje; y, (2) que no podía determinar con certeza que él hubiera sido quien lo amenazó.

Por otra parte, en atención a la infracción al Código 110 del Reglamento Núm. 9221, sostuvo que, más allá de la fotografía, no surgía ninguna investigación que lo vinculara con el perfil de Facebook. Detalló que no se había pasado prueba alguna sobre cuándo y con qué se había tomado la fotografía, ni si lo hizo con la intención de crear un perfil en Facebook y divulgarla al público en general.

En este punto, resulta menester señalar que, el mismo 1 de octubre de 2024, el señor Collazo Torres presentó una moción en la que solicitó la regrabación de la vista celebrada el 18 de septiembre de 2024[11].

---

[10] *Véase*, apéndice del recurso, a las págs. 3-6.

[11] *Íd.*, a la pág. 7.

El 7 de octubre de 2024, la agencia acogió la solicitud de reconsideración[12]. No obstante, la misma no fue atendida dentro del término de noventa (90) días que dispone la ley.

Así las cosas, el 29 de enero de 2025, el señor Collazo Torres instó el recurso que nos ocupa y señaló la comisión de los siguientes errores:

1. ERRÓ EL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN AL ENCONTRAR INCURSO AL RECURRENTE POR VIOLACIÓN A LOS CÓDIGOS 110 Y 126 A BASE DE MERAS ESPECULACIONES.

2. ERRÓ EL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN AL NO ENTREGAR LA GRABACIÓN DE LA VISTA CELEBRADA EL 18 DE SEPTIEMBRE DE 2024 OPORTUNAMENTE SOLICITADA EN CLARO INCUMPLIMIENTO CON LA SECCIÓN 3.13 (A) DE LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME DEL GOBIERNO DE PUERTO RICO Y EL DEBIDO PROCESO DE LEY.

(Mayúsculas en el original).

Conforme ordenásemos, el 20 de febrero de 2025, el Departamento de Corrección y Rehabilitación, por conducto de la Oficina del Procurador General, presentó le regrabación de la vista disciplinaria. Posteriormente, el 4 de marzo de 2025, presentó su oposición al recurso.

Evaluado el recurso, la oposición al mismo, la regrabación de la vista disciplinaria, así como la prueba adjuntada, resolvemos.

II

A

Es norma reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013).

Así pues, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser

---

[12] *Véase*, apéndice del recurso, a las págs. 1-2.

respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Es por ello que la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

Cónsono con lo anterior, con el propósito de "convencer al tribunal de que la evidencia en la cual se fundamentó la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración". *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 131 (1998).

No obstante, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011); *Asoc. Fcias. V. Caribe Specialty et al. II*, 179 DPR 923, 941 (2010). Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) **la determinación administrativa no esté basada en evidencia sustancial**; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) **cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional**; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

El Reglamento Núm. 9221 establece un mecanismo para imponer medidas disciplinarias a aquellos confinados que violen las normas y procedimientos establecidos en las instituciones bajo la jurisdicción del Departamento de Corrección y Rehabilitación.

En lo pertinente, el referido reglamento define acto prohibido en su Regla 4 (1) como cualquiera que implique una violación a las normas de conducta de la institución, que conlleve la imposición de medidas disciplinarias, que incluye cualquier acto u omisión, o conducta tipificada como delito. El Código 110 de la Regla 15 del Reglamento Núm. 9221 establece como un acto prohibido sujeto a sanción el siguiente:

> Uso de Tecnologías de Información – Se prohíbe el uso de tecnologías de información para activar y mantener cuentas de correo electrónico, perfiles en redes sociales, blogs, mensajería instantánea, mensajes de texto y "websites"; creados a sabiendas y con intención de cumplir, difundir, publicar, revelar o ceder a terceros; datos, documentos, hechos descubiertos, fotografías e imágenes captadas tanto propias o de otras personas como del perímetro, la infraestructura y la planta física de la institución; con el propósito de exponer a, y permitir que el público en general, accediendo a la Internet, transmisión, grabación o reproducción de texto, sonido, imágenes o cualquier señal de telecomunicaciones, archivo informático o electrónico advenga en conocimiento de la situación personal de confinamiento del miembro de la población correccional.

Reglamento Núm. 9221, Regla 15 (110).

De otro lado, el Código 126 de la Regla 115 del Reglamento Núm. 9221 dispone como sigue:

> Amenaza – Toda persona que amenace a otra con causar daño determinado a la integridad corporal, derechos, honor o patrimonio, de esa persona o de su familia.

Reglamento Núm. 9221, Regla 15 (126).

Cuando un oficial correccional sea testigo de un incidente o infracción a las normas del Reglamento Núm. 9221 por parte de un confinado, este podrá presentar una querella. *Íd.*, Regla 6. Una vez presentada, esta es asignada a un oficial de querella, quien deberá conducir la investigación correspondiente. *Íd.*, Regla 12. En instancias en las que se impute la comisión de un acto prohibido, la Regla 13 del

Reglamento Núm. 9221 dispone que el oficial de querella referirá el caso al oficial examinador de vistas disciplinarias para el señalamiento y la celebración de la vista.

Celebrada la vista, el oficial examinador adjudicará la querella e impondrá las sanciones que, a su discreción, entienda correspondientes. *Íd.*, Regla 28. **La determinación deberá estar basada en la totalidad de la evidencia presentada, la cual deberá evaluarse bajo el estándar de preponderancia de la prueba**. *Íd.*

Entretanto, la Regla 3 del mismo cuerpo legal establece que ningún confinado puede ser sancionado por un acto prohibido por el Reglamento Núm. 9221, **si no lo ha realizado con intención o negligencia**. Añade que, "la intención o la negligencia se manifiestan por las circunstancias relacionadas con el acto prohibitivo, la capacidad mental y las manifestaciones y conducta de la persona." *Íd.* Establece también que todos los actos prohibidos que incluye el Reglamento Núm. 9221 **requieren intención**, "salvo que expresamente se indique que baste la negligencia o la propia naturaleza del acto prohibido lo requiera." *Íd.*

Un acto prohibido se considera cometido con intención cuando (1) el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; o, (2) el acto prohibido es una consecuencia natural de la conducta voluntaria de la persona; o, (3) cuando el querellado ha previsto o sea consciente de que existe una alta probabilidad de que se produzca el acto prohibido mediante su conducta. *Íd.* De otra parte, un acto prohibido se entiende cometido por negligencia cuando se realiza sin intención, pero sin observar el cuidado debido que hubiese tenido una persona al actuar con cordura, templanza, sensatez y juicio. *Íd.*

C

Como norma general, los tribunales pueden atender toda controversia que sea traída ante su consideración y que sea justiciable. *Rodríguez v. Overseas Military,* 160 DPR 270, 277 (2003). No obstante, debido a la importancia de que las actuaciones de los tribunales sean

dentro del marco de su jurisdicción, constituye una doctrina reiterada por el Tribunal Supremo que debemos ser celosos guardianes de ella. *Sánchez et al. v. Srio. de Justicia et al.,*157 DPR 360, 369 (2002). Por lo tanto, si una controversia no es justiciable, quiere decir que el tribunal está impedido de resolverla, por carecer de jurisdicción sobre ella. Es decir, "[l]a doctrina de la justiciabilidad de las causas gobierna el ejercicio de la función revisora de los tribunales, fijando la jurisdicción de los mismos". *Smyth, Puig v. Oriental Bank,* 170 DPR 73, 75 (2007).

De otra parte, el Tribunal Supremo ha expresado que un pleito se torna académico cuando se intenta obtener una sentencia sobre un asunto que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente. *E.L.A. v. Aguayo,* 80 DPR 552, 584 (1958). Es decir, una controversia puede convertirse en académica cuando su condición viva cesa por el transcurso del tiempo. *U.P.R. v. Laborde Torres y otros I,* 180 DPR 253, 281 (2010).

Además, resulta importante puntualizar que, por imperativo constitucional, los tribunales pierden la jurisdicción sobre un caso por academicidad. Ello sucede cuando ocurren cambios durante el trámite judicial de una controversia particular, que hacen que la misma pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia y las partes. *CEE v. Depto. de Estado,* 134 DPR 927, 935-936 (1993). Así pues, el propósito de la aludida doctrina evita el uso inadecuado de recursos judiciales. A su vez, la doctrina de academicidad da vida al principio de justiciabilidad. *Crespo v. Cintrón,* 159 DPR 290, 298 (2003).

Por otro lado, al examinar si un caso es académico, se deben evaluar los eventos anteriores, próximos y futuros, para determinar si la controversia entre las partes sigue viva y subsiste con el tiempo. En cambio, de no ser así, los tribunales están impedidos de intervenir. *U.P.R. v. Laborde Torres y otros I,* 180 DPR, a la pág. 281.

III

En su primer señalamiento de error, el señor Collazo Torres sostiene que el Departamento de Corrección y Rehabilitación incidió al encontrarlo incurso por violación a los Códigos 110 y 126 del Reglamento Núm. 9221. Aduce que, más allá de la fotografía en cuestión, de la investigación no surge otro hecho o acción que lo vincule con el perfil en Facebook. Añade que, en su testimonio, el teniente Loubriel Rosado expresó: (1) que se dejó llevar por la fotografía que aparecía en el perfil de Facebook para determinar que fue él quien envió el mensaje; y, a su vez, (2) que no podía determinar con certeza que él fue quien lo envió.

De otro lado, señala que tampoco se presentó prueba sobre cuándo o con qué se había tomado la fotografía, ni si se había tomado con la intención de crear el perfil en Facebook y divulgarla al público, requisito exigido para encontrarlo incurso por violación al Código 110 del Reglamento Núm. 9221.

Por su parte, el Departamento de Corrección y Rehabilitación se opone y esgrime que la prueba presentada cumplió a cabalidad con el *quantum* de preponderancia que exige el ordenamiento jurídico en la adjudicación de procesos disciplinarios contra miembros de la población correccional. Añade que el señor Collazo Torres no presentó evidencia para controvertir la prueba presentada en su contra.

Así pues, en el presente caso, nos corresponde determinar si la prueba presentada cumplió con el estándar de prueba requerido para encontrar incurso al recurrente por infracción a los Códigos 110 y 126 del Reglamento Núm. 9221. Tras una evaluación detenida del expediente ante nos, así como de la regrabación de la vista, respondemos en la negativa.

Del derecho consignado surge que, para encontrar incurso a un confinado por un acto prohibido por el Reglamento Núm. 9221, resulta necesario que se demuestre, por preponderancia de la evidencia[13], la

---

[13] El estándar de preponderancia de la evidencia "es tanto como establecer como hechos probados aquellos que con mayores probabilidades ocurrieron." *Berríos v. U.P.R.*, 116 DPR 88, 101 (1985); *Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980).

intención de la persona de cometer el acto. Nada sugiere que sea esta última quien tenga el peso de la prueba.

Así, en el caso específico del Código 110 del Reglamento Núm. 9221, y en lo que concierne, se debe demostrar con mayor probabilidad que el confinado utilizó tecnologías de información para activar y mantener un perfil en la red social Facebook, a sabiendas y con la intención de publicar fotografías suyas o del perímetro, con el propósito de exponer y permitir que el público general tome conocimiento de su situación de confinamiento.

En el presente caso, se desprende de la regrabación de la vista que el teniente Loubriel Rosado declaró que, para presentar la querella contra el recurrente, se dejó llevar por la fotografía que aparecía en el perfil de Facebook. Más allá de dicha imagen, este no contaba con ninguna otra prueba que vinculara al señor Collazo Torres con el perfil en cuestión. Tampoco se presentó evidencia tendente a demostrar la intención que requiere el acto prohibido imputado. Nótese que, aunque el teniente manifestó que reconocía el lugar de la fotografía, no podía precisar cuándo fue tomada.

A juicio de este Tribunal, dicha prueba no cumple con el estándar exigido por el ordenamiento jurídico en estos casos. Ciertamente, reconocemos que el *quantum* de prueba requerido resulta en una carga menor. Recordemos pues, que tanto el ordenamiento jurídico[14] como el Reglamento Núm. 9221 establecen que el estándar de prueba en estos casos es el de preponderancia. Reglamento Núm. 9221, Regla 28. Ahora bien, dicha normativa no implica que una mera fotografía en un perfil de Facebook, sin más, resulte suficiente para que se configure la violación al Código 110 del Reglamento Núm. 9221. En otras palabras, la aparición de una fotografía en un perfil de una red social no es suficiente para demostrar, bajo el estándar de preponderancia de la evidencia, que la misma fue tomada con la intención de ser publicada en dicha red y dar a conocer una

---

[14] Véase, *OEG v. Martínez Giraud*, 210 DPR 79, 93 (2022).

situación de confinamiento. Así, coincidimos con la apreciación del recurrente, en tanto la prueba presentada no satisfizo el *quantum* de prueba requerido, ni demostró la intención que requiere el Código 110 del Reglamento Núm. 9221; más bien, la prueba resultó especulativa.

Sobre lo anterior, resulta meritorio señalar que, en su escrito en oposición, la parte recurrida aduce que del testimonio del teniente Loubriel Rosado surge que, luego del incidente, "se ocupó un teléfono celular en la celda asignada al recurrente"[15]. Nada más lejos de la verdad[16].

Ciertamente, el teniente Loubriel Rosado expresó que, luego del suceso, se realizó un operativo en el que se ocupó un celular. Ahora bien, a preguntas del Oficial Examinador, especificó con detalle que el lugar en el que se encuentra el señor Collazo Torres no cuenta con celdas, sino que se trata de un espacio con camas contiguas. Adicionalmente, declaró que el celular no fue ocupado en la cama asignada al recurrente. De modo que la aseveración de la parte recurrida resulta errónea.

En cuanto a la infracción al Código 126 del Reglamento Núm. 9221, razonamos que tampoco se presentó evidencia suficiente para encontrar incurso al recurrente por dicho código. En primer orden, el teniente Loubriel Rosado sostuvo que nunca había tenido un altercado con el recurrente. Además, y más importante aún, declaró en **tres (3) ocasiones** que no tenía certeza de que el mensaje amenazante hubiera sido enviado por el señor Collazo Torres. Nótese pues que, aun evaluando la totalidad de la evidencia conforme al estándar de preponderancia, la misma no resulta suficiente para demostrar que el señor Collazo Torres infringió el Código 126 del Reglamento Núm. 9221.

Así pues, si bien es cierto que los tribunales apelativos venimos llamados a otorgar amplia deferencia a las decisiones administrativas, no

---

[15] Véase, *Escrito en cumplimiento de orden* de la parte recurrida, a la pág. 10.

[16] Precisamos, además, que, en su escrito, la agencia recurrida argumenta que el señor Collazo Torres declaró en la vista celebrada. Ello también resulta incorrecto. La única declaración del recurrente se obtuvo de manera escrita el 24 de julio de 2024, durante el proceso de investigación de la querella. Una somera lectura del expediente es suficiente para conocer tal hecho. Asimismo, la regrabación presentada evidencia que el recurrente no prestó testimonio en la vista.

podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012). Conforme a ello, el criterio rector en el análisis de revisión judicial es la **razonabilidad** de la determinación recurrida.

Con todo, concluimos que la determinación recurrida resulta irrazonable, por lo que la agencia abusó de su discreción. La prueba presentada no logró establecer con mayor probabilidad que el señor Collazo Torres hubiera utilizado tecnologías de información para crear un perfil en Facebook, con la intención de publicar la fotografía en la que aparece y dar a conocer a terceras personas su condición de confinamiento. Mucho menos logró demostrar, conforme al estándar de preponderancia, que fue el recurrente quien envió el mensaje amenazante. En consecuencia, razonamos que el primer señalamiento de error fue cometido.

En su segundo señalamiento de error, el señor Collazo Torres sostiene que el Departamento de Corrección y Rehabilitación erró al no entregar la grabación de la vista celebrada el 18 de septiembre de 2024. Aduce que dicha omisión atenta contra su derecho a un debido proceso de ley.

Examinado el recurso ante nos, concluimos que tal señalamiento de error resulta académico.

Conforme surge del expediente, la parte recurrida no atendió la moción del señor Collazo Torres en la que solicitaba la regrabación de la referida vista[17]. No obstante, tras la presentación del recurso del título, este Tribunal emitió una *Resolución* mediante la cual, entre otros, concedió al Departamento de Corrección y Rehabilitación un plazo de cinco (5) días para presentar la regrabación en cuestión. En cumplimiento, el 10 de febrero de 2025, la parte recurrida, por conducto de la Oficina del

---

[17] *Véase*, apéndice del recurso, a la pág. 7.

Procurador General de Puerto Rico, presentó la regrabación de la vista disciplinaria.

A la luz de ello, resulta evidente que, a esta fecha, el señalamiento de error se ha tornado académico. Precisamos que el Tribunal Supremo ha resuelto que un pleito se torna académico cuando "con el paso del tiempo su condición de controversia viva y presente se pierde". *Asoc. de Periodistas v. González*, 127 DPR 704, 717 (1991).

Consecuentemente, este Tribunal se ve impedido de entrar a considerar los méritos del segundo señalamiento de error, toda vez que su adjudicación no tendría efecto práctico alguno.

IV

Por los fundamentos antes expuestos, revocamos la *Resolución* notificada el 26 de septiembre de 2024, por la División de Disciplina de Confinados del Departamento de Corrección y Rehabilitación. En su consecuencia, ordenamos que se elimine del récord del recurrente la querella revocada.

La juez Lebrón Nieves disiente sin opinión escrita.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones