Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| MARY I. RODRÍGUEZ LÓPEZ, por sí y en representación de su hija DANA I. FUENTES RODRÍGUEZ<br>Parte Apelante<br><br>v.<br><br>MIGUEL J. CUADRADO CINTRÓN; SU ESPOSA JANE DOE Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS; MJC CONTRACTOR SERVICES CORP.; UNIVERSAL INSURANCE COMPANY; ABC INSURANCE COMPANY; DEF INSURANCE COMPANY; FULANO DE TAL; JOHN DOE; XYZ INSURANCE COMPANY<br>Parte Apelada | TA2025AP00216 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.:<br>BY2022CV05454<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de septiembre de 2025.

El 22 de mayo de 2025, el Tribunal de Primera Instancia (TPI, foro primario o foro apelado), Sala Superior de Bayamón, pronunció una *Sentencia*, notificada y archivada en autos en esa misma fecha.[1] Mediante esta determinación, el foro primario declaró *ha lugar* a la solicitud de sentencia sumaria presentada por MJC Contractor Services, Corp. (MJC Contractor), el señor Miguel J. Cuadrado Cintrón (señor Cuadrado) y Universal Insurance Company

---

[1] *Sentencia*, SUMAC en el caso BY2022CV05454, entrada 84.

(Universal) (en conjunto, apelados),[2] la cual fue refutada por la señora Mary I. Rodríguez López (señora Rodríguez) y la señorita Dana I. Fuentes Rodríguez (señorita Fuentes), según representada por su madre, la señora Rodríguez, por esta ser menor de edad (en conjunto, apelantes).[3] El foro apelado determinó que desestimaría la *Demanda*, debido a que MJC Contractors no autorizó al señor José J. Rodríguez Rosa (señor Rodríguez) a conducir la camioneta involucrada en el accidente del 30 de octubre de 2021.

Mediante el recurso de apelación incoado el 8 de agosto de 2025, las apelantes solicitan que revoquemos la *Sentencia* y que devolvamos el caso al TPI para la celebración del juicio en su fondo.[4]

El 5 de septiembre de 2025, los apelados presentaron su oposición a la apelación, mediante la cual solicitan que confirmemos el dictamen pronunciado por el foro primario.[5]

Examinados los escritos a la luz del derecho aplicable y por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El 27 de octubre de 2022, la señora Rodríguez y la señorita Fuentes presentaron una *Demanda* contra el señor Cuadrado, MJC Contractor y Universal.[6] Arguyeron que sufrieron graves daños tras un accidente automovilístico mediante el cual murió la señora Kilmarie Fuentes Rodríguez (señora Fuentes), quien era hija de la señora Rodríguez y hermana mayor de la señorita Fuentes; además, era el sustento económico familiar. Alegaron que la muerte fue una consecuencia directa de la culpa, crasa negligencia e imprudencia de MJC Contractor y del señor Cuadrado debido a que estos no

---

[2] *Moción Solicitando Sentencia Sumaria, Íd.*, entrada 70.

[3] *Moción en Oposición a [la] Moción en Solicitud de Sentencia Sumaria, Íd.*, entrada 77.

[4] *Apelación*, SUMAC-TA en el recurso TA2025AP00216, entrada 1.

[5] *Alegato en Oposición de la Parte Apelada MJC Contractor Services Corp., Miguel J. Cuadrado Cintrón y Universal Insurance Company, Íd.*, entrada 3.

[6] *Demanda*, SUMAC en el caso BY2022CV05454, entrada 1.

contaban con un sistema de seguridad adecuado en sus facilidades, lo cual creó un riesgo previsible de que los vehículos en su propiedad fueran hurtados.

El 11 de enero de 2023, Universal presentó su contestación a la demanda.[7] Similarmente, el 27 de enero de 2023, MJC Contractor y el señor Cuadrado presentaron su contestación a la demanda.[8] En síntesis, los apelados argumentaron que el señor Rodríguez no era un conductor autorizado porque obtuvo ilegalmente la posesión de un vehículo perteneciente a MJC Contractor, por lo cual fue sentenciado. Asimismo, el señor Cuadrado adujo que no le correspondía responder por los daños alegados porque MJC Contractor es una entidad con personalidad jurídica propia y patrimonio distinto e independiente.

Luego de varios trámites procesales que resultan innecesarios pormenorizar, los apelados presentaron una solicitud de sentencia sumaria el 14 de febrero de 2025.[9] En esencia, sostuvieron que procedía que el foro primario desestimara con perjuicio la *Demanda* en su totalidad porque MJC Contractor no fue un cocausante del daño debido a que el señor Rodríguez no era un conductor autorizado expresa o tácitamente para operar el vehículo hurtado de sus facilidades. Asimismo, argumentaron que el señor Cuadrado no respondía personalmente por los hechos alegados debido a que MJC Contractor tenía personalidad jurídica propia.

En respuesta a esto, el 24 de marzo de 2023, la señora Rodríguez y la señorita Fuentes radicaron su oposición al petitorio sumario.[10] Alegaron que aún existían controversias de hechos materiales que debían dilucidarse en un juicio. Particularmente, sostuvieron que el foro apelado debía determinar si los apelantes

---

[7] *Contestación a la Demanda, Íd.*, entrada 10.
[8] *Contestación a la Demanda, Íd.*, entrada 15.
[9] *Moción Solicitando Sentencia Sumaria, Íd.*, entrada 70.
[10] *Moción en Oposición a [la] Moción en Solicitud de Sentencia Sumaria, Íd.*, entrada 77.

debían responder por los daños, debido a que la causa próxima de la cadena de eventos fue la negligencia de no mantener un sistema de seguridad adecuado en el almacén de vehículos; por ello, un hurto era previsible. Así, esto constituyó una autorización tácita para que el señor Rodríguez operara el vehículo, lo cual culminó en el referido accidente. Además, razonaron que el señor Cuadrado debía responder personalmente por los daños alegados. Por ello, le solicitaron al TPI que denegara la petición dispositiva de los apelados.

Así, el 22 de mayo de 2025, el foro primario dictaminó sumariamente una *Sentencia* mediante la cual declaró *ha lugar* a la solicitud de sentencia sumaria incoada por los apelados y, consecuentemente, desestimó la causa de acción del caso de epígrafe en su totalidad.[11] Tras evaluar las peticiones y los documentos acompañados, el foro apelado procedió a formular las siguientes determinaciones de hechos:

1. MJC es una corporación debidamente formada y autorizada a operar bajo las leyes del Estado Libre Asociado de Puerto Rico.

2. MJC es el dueño registral del vehículo de motor marca Ford, año 2008, modelo F-150, color blanco, tablilla 1036727.

3. Para la fecha de los hechos, Miguel J. Cuadrado Cintrón era el presidente de MJC.

4. El 30 de octubre de 2021, el Sr. José J. Rodríguez Rosa irrumpió en un local perteneciente a MJC y se apropió ilegalmente de la camioneta F-150.

5. El 18 de noviembre de 2021, el Sr. José J. Rodríguez Rosa declaró que, el 30 de octubre de 2021, mientras estaba bajo los efectos del alcohol y otras sustancias, se apropió ilegalmente de una camioneta, marca Ford, modelo F-150, que se encontraba en un local perteneciente a MJC. Manifestó que, luego, mientras conducía por el Municipio de Toa Alta, impactó otro vehículo y, acto seguido, se bajó de la camioneta comenzó a caminar y se alejó del área del accidente, hasta, eventualmente, llegar a su casa.

---

[11] *Sentencia, Íd.,* entrada 84.

6. El Sr. José J. Rosa Rodríguez declaró que para entrar al local de MJ[C], brincó una verja. Manifestó que halló las llaves de la camioneta F-150 "pegadas" a la ignición de la camioneta. Indicó que, para sacar la camioneta del local, utilizó una llave de perro y soltó un tornillo del portón corredizo del local y este abrió de golpe.

7. El Sr. José J. Rodríguez Rosa fue acusado de infringir el Art. 4.02 de la Ley Núm. 22- 2000, (9 LPRA sec. 5101), el 30 de octubre de 2021.

8. Como consecuencia de un preacuerdo firmado por la defensa del Sr. José J. Rodríguez Rosa, el Ministerio Público enmendó las acusaciones presentadas en su contra.

9. El 26 de abril de 2022, el Sr. José J. Rodríguez Rosa fue declarado culpable por confesión por infringir los siguientes estatutos: 1) tentativa de escalamiento agravado según el Artículo 195 (A) del Código Penal de Puerto Rico, Ley Núm. 146-2012 (33 LPRA sec. 5265); 2) tentativa de apropiación ilegal de vehículo, según el Artículo 18.1 de la Ley para la Protección de la Propiedad Vehicular, Ley Núm. 8-1987, (9 LPRA sec. 3217); 3) conducir de forma negligente, según el Artículo 5.07 (B y C) de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, (9 LPRA sec. 5127); 4) infringir el Artículo 4.02 de la Ley Núm. 22-2000, (9 LPRA sec. 5102).

10. MJC no autorizó expresa ni tácitamente al Sr. Rodríguez Rosa a utilizar la camioneta F-150.[12]

El foro primario concluyó que, según los documentos presentados por las partes, y conforme admitido por las apelantes, el día de los hechos, el señor Rodríguez irrumpió clandestinamente el local de MJC Contractor y se apropió ilegalmente de la camioneta. Por ello, dedujo que, desde su origen, la posesión de la camioneta por parte del señor Rodríguez fue ilegal y no autorizada. Explicó el foro primario que la presunta dilación en reportar el hurto de la camioneta por parte de MJC Contractor no configuró un consentimiento para que el señor Rodríguez condujera la camioneta, ni una ratificación de las acciones del señor Rodríguez. Así pues, el foro apelado coligió que MJC Contractor no era responsable por los daños y perjuicios causados por el señor Rodríguez al conducir de forma culposa y negligente su camioneta.

---

[12] *Íd.*, págs. 3-4.

Por otro lado, el foro apelado coligió que las apelantes no habían presentado evidencia admisible que estableciera que procedía descorrer el velo corporativo y responsabilizar al señor Cuadrado personalmente por los daños alegados en la demanda. Por consiguiente, y debido a que el señor Cuadrado no es el titular registral de la camioneta involucrada en la colisión vehicular, el foro primario también desestimó la causa de acción presentada en su contra, su cónyuge y la sociedad legal de bienes gananciales.

Inconformes, la señora Rodríguez y la señorita Fuentes presentaron una reconsideración ante el foro apelado.[13] A esto, los apelados refutaron el 6 de julio de 2025.[14] La solicitud de las apelantes fue declarada *no ha lugar* mediante una resolución el 8 de julio de 2025; esta fue notificada y archivada en autos el 9 de julio de 2025.[15]

Insatisfechas aún, las apelantes presentaron el recurso de epígrafe el 8 de agosto de 2025 y señalaron que el TPI cometió los siguientes errores:[16]

> Erró el TPI al dictar Sentencia Sumaria a favor de los codemandados apelados, en contravención con la Regla 36 de Procedimiento Civil, existiendo en el presente caso múltiples controversias genuinas sobre hechos materiales cuya resolución envuelve aspectos subjetivos y de inferencias razonables sobre negligencia y causalidad, que dependían ineludiblemente de la credibilidad y apreciación de la prueba testifical en un Juicio en su Fondo.

> Erró el TPI al sostener la Sentencia Sumaria basándose casi exclusivamente en una declaración jurada que es física y lógicamente inverosímil e indigna de crédito, ignorando la conducta negligente y permisiva de los codemandados, incluyendo la omisión de notificar el hurto del vehículo en violación al Artículo 13 de la Ley 8- 1987, que constituyó un consentimiento tácito para el uso del camión y una causa concurrente y previsible del accidente fatal, activando su responsabilidad bajo el

---

[13] *Moción en Solicitud de Enmiendas y Determinaciones de Hechos Adicionales bajo la Regla 43.1 de Procedimiento Civil y en Solicitud de Reconsideración de [la] Sentencia bajo la Regla 47 de Procedimiento Civil, Íd.*, entrada 88.

[14] *Oposición a [la] Solicitud de Enmiendas y Determinaciones de Hechos [,] y a [la] Reconsideración, Íd.*, entrada 92.

[15] *Resolución Interlocutoria, Íd.*, entrada 93.

[16] *Apelación*, SUMAC-TA en el recurso TA2025AP00216, entrada 1.

Artículo 1536 del Código Civil y el Artículo 21.01 de la Ley 22-2000.[17]

El 5 de septiembre de 2025, MJC Contractor, el señor Cuadrado y Universal presentaron su oposición a la apelación incoada.[18] En síntesis, sostuvieron que el foro primario no erró en su determinación, debido a que su exposición de hechos se basó en la prueba que tuvo ante su consideración. También, arguyeron que no existía controversia de hechos materiales, debido a que lo apuntalado como hechos materiales por las apelantes eran realmente de naturaleza inmaterial y no eran esenciales para adjudicar la controversia principal: si el señor Rodríguez era un conductor autorizado del vehículo perteneciente a MJC Contractor. Asimismo, argumentaron que el señor Rodríguez "entró sin autorización a las instalaciones de la parte demandada, hurtó un vehículo de motor y ocasionó el accidente de autos, hechos que fueron admitidos por el propio [señor Rodríguez] y por los cuales se declaró culpable en el foro penal";[19] por ello, los apelantes no serían responsables por los actos del señor Rodríguez, debido a que "la responsabilidad del dueño no se extiende a situaciones donde el vehículo ha sido hurtado y posteriormente causa daños a otra persona".[20]

## II.

### A.

Es harto conocido que el mecanismo procesal de la sentencia sumaria se rige por la Regla 36.1 de las de Procedimiento Civil.[21] El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un

---

[17] *Íd.*, pág. 8.
[18] *Alegato en Oposición de la Parte Apelada MJC Contractor Services Corp., Miguel J. Cuadrado Cintrón y Universal Insurance Company, Íd.*, entrada 3.
[19] *Íd.*, pág. 8.
[20] *Íd.*, pág. 18.
[21] Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1.

juicio plenario.[22] De esta forma, se promueve la descongestión de calendarios.[23]

Por medio de este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta.[24] Sin embargo, la sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros: cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y que solo reste por disponer las controversias de derecho existentes.[25]

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la polémica.[26] Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo.[27] De igual modo, la parte promovente puede presentar una sentencia sumaria por insuficiencia de prueba si demuestra que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial, y (3) procede como cuestión de derecho.[28]

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real por lo cual cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria.[29] En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre

---

[22] *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

[23] *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

[24] *Íd.*, pág. 332.

[25] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).

[26] Regla 36.1 de las de Procedimiento Civil, *supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015).

[27] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

[28] *Pérez v. El Vocero de PR*, 149 DPR 427, 446-447 (1999).

[29] *Meléndez González et al. v. M. Cuebas*, supra, pág. 110.

los hechos materiales.[30] De esta manera, la parte promovida debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición.[31] Es decir, "**la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa**".[32] **No puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa**.[33] En síntesis, ha quedado establecido que los tribunales no pueden dictar sentencia sumaria en cuatro (4) situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial, o (4) cuando no procede como cuestión de derecho.[34]

Entretanto, la Regla 36.3 de las de Procedimiento Civil, *supra*, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida.[35] Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3 (a) de las de Procedimiento Civil dispone que la misma tiene que desglosar lo siguiente:

(1) una exposición breve de las alegaciones de las partes;
(2) los asuntos litigiosos o en controversia;
(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;

---

[30] *Íd.* (*citando a Ramos Pérez v. Univisión,* supra, pág. 214).
[31] *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020).
[32] *Íd.* (Énfasis suplido).
[33] Regla 36.3 (c) de las de Procedimiento Civil, *supra*, R. 36.3 (c); véase *SLG Zapata-Rivera v. JF Montalvo,* supra, pág. 452-453; *Ramos Pérez v. Univisión,* supra, págs. 215-216.
[34] *Oriental Bank v. Perapi,* 192 DPR 7, 26-27 (2014).
[35] Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3.

(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
(6) el remedio que debe ser concedido.[36]

Mientras tanto, la Regla 36.3 (b) de las de Procedimiento Civil prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia, y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.[37] Asimismo, cuando se presente una solicitud de sentencia sumaria conforme a la Regla 36 de las de Procedimiento Civil "la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede".[38]

En esa misma línea, la juzgadora o el juzgador de los hechos debe evaluar la prueba presentada para determinar cuáles hechos han quedado demostrado sujeto a que "[e]l peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes";[39] "[l]a obligación de presentar evidencia primariamente recae sobre la parte que sostiene la afirmativa en el

---

[36] *Íd.*, R. 36.3 (a).
[37] *Íd.*, R. 36.3 (b).
[38] *Íd.*, R. 36.3 (c).
[39] Regla 110 (A) de Evidencia, 32 LPRA Ap. VI, R. 110 (A).

asunto en controversia";[40] y, en casos civiles, la decisión de la juzgadora y el juzgador se realizará mediante la preponderancia de la prueba conforme a criterios de probabilidad.[41] La preponderancia de la prueba ha sido definida como cuando se establece "como hechos probados que con mayores probabilidades ocurrieron".[42]

De otra parte, nuestro Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.[43]

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de las de Procedimiento Civil,[44] al igual que los criterios que la jurisprudencia le exige al foro primario. Asimismo, debe examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, nuestro máximo foro reconoció que el foro apelativo está limitado, toda vez que no puede tomar en consideración evidencia que las partes ni presentaron ante el foro primario ni adjudicar los hechos materiales en controversia.[45]

En segundo lugar, señaló que el Tribunal de Apelaciones debe revisar que tanto la moción en solicitud de sentencia sumaria como la oposición cumplan con los requisitos de forma codificados en la Regla 36 de las de Procedimiento Civil.[46]

En tercer lugar, ordenó que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en

---

[40] *Íd.*, R. 110 (B).
[41] *Íd.*, R. 110 (F).
[42] *Berríos v. U.P.R.*, 116 DPR 88, 101 (1985) (citando a *Zambrana v. Hospital Santo Asilo de Damas*, 109 DPR 517, 521 (1980)).
[43] *Meléndez González et al. v. M. Cuebas*, supra.
[44] Regla 36 de las de Procedimiento Civil, *supra*.
[45] *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.
[46] *Íd.*; Regla 36 de las de Procedimiento Civil, *supra*.

realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de las de Procedimiento Civil.[47]

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho a la controversia.[48]

**B.**

El Artículo 1063 del Código Civil de Puerto Rico, Ley Núm. 55-2020, establece que son fuentes de las obligaciones: (a) la ley; (b) los contratos; (c) los cuasicontratos; (d) los actos ilícitos; (e) los actos u omisiones en que interviene culpa o negligencia, y (f) cualquier otro acto idóneo para producirlas, de conformidad con el ordenamiento jurídico.[49] Por su parte, el Artículo 1158 del Código Civil dispone que: "[l]a persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados".[50]

En cuanto a la obligación civil extracontractual, el Artículo 1536 del Código Civil dispone que la persona que por culpa o negligencia cause daño a otra, viene obligado a repararlo.[51] Para que prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado, y (3) el daño real causado al reclamante.[52]

---

[47] *Meléndez González et al. v. M. Cuebas*, supra, pág. 118; 32 LPRA Ap. V, R. 36.4.
[48] *Meléndez González et al. v. M. Cuebas*, supra, pág. 119.
[49] 31 LPRA sec. 8984.
[50] *Íd.*, sec. 9303.
[51] *Íd.*, sec. 10801.
[52] *Nieves Díaz v. González Massas,* supra, pág. 843; *López v Porrata Doria,* 169 DPR 135, 150 (2006).

Respecto al primer elemento, el Tribunal Supremo ha establecido que el concepto de la culpa "es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o daño".[53] De igual forma, ha esbozado que los conceptos de *culpa* y *negligencia* equivalen al incumplimiento con el deber de cuidado que, a su vez y en esencia, atañen el no anticipar o prever las consecuencias probables de los actos que hubieran sido previstas por una persona prudente y razonable.[54] Sin embargo, lo anterior no exige imaginar de manera precisa la universalidad de consecuencias que pueden surgir por determinada conducta.[55] Por lo tanto, "[l]o esencial es que exista un deber de prever, de forma general, las consecuencias de determinada clase".[56] A esos fines, se ha recurrido a la figura del buen padre de familia, o la persona prudente y razonable, para fines de determinar cómo debe obrar una persona de diligencia normal u ordinaria en virtud de unas circunstancias particulares.[57]

Por tanto, si el daño causado era previsible, habrá responsabilidad; si no lo era, se considerará un evento fortuito.[58] Ahora bien, el deber de cuidado y de prever los posibles daños no se extiende a cualquier peligro inimaginable que pueda ocasionar un perjuicio, sino que más bien debe estar basado en probabilidades, no en meras posibilidades.[59]

Por otro lado, el segundo elemento requiere que, entre el daño causado y el acto u omisión culposa o negligente, haya un nexo causal; es decir, una causa adecuada. La teoría de la causalidad adecuada dispone que no es causa toda condición sin la cual no se

---

[53] *López v. Porrata Doria,* supra.
[54] *Nieves Díaz v. González Massas,* supra, pág. 844; *López v. Porrata Doria,* supra, pág. 151; *Valle v. E.L.A.,* 157 DPR 1, 18 (2002).
[55] *Pons v. Engebretson,* 160 DPR 347, 355 (2003).
[56] *Íd.*
[57] *Nieves Díaz v. González Massas,* supra, pág. 844; *López v Porrata Doria,* supra, págs. 150-151.
[58] *Pons v. Engebretson,* supra.
[59] *López v. Porrata Doria,* supra, págs. 164-165.

hubiera producido el resultado, sino la que ordinariamente la produce según la experiencia general".[60] Es decir, "un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, al mirarlo retrospectivamente, el daño parece ser la consecuencia razonable y común de la acción u omisión".[61] Por ello, el Tribunal Supremo ha indicado que "[l]a doctrina de causalidad adecuada requiere de índices o criterios fundados en la experiencia y el conocimiento de causas y efectos para darle contenido".[62]

Por último, para que prospere una causa de acción por daños y perjuicios, es necesario que, efectivamente, ocurra un daño. El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona.[63] Por consiguiente, ante la inexistencia de un daño, no existe obligación de indemnizar.[64]

En nuestro ordenamiento jurídico, se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales.[65]

## C.

La responsabilidad civil extracontractual de los dueños de vehículos de motor se ciñe a situaciones en las cuales medie la culpa o negligencia. El Artículo 21.01 de la *Ley de Vehículos y Tránsito de Puerto Rico*, Ley Núm. 22-2000, dispone sobre esto lo siguiente:

> El dueño de cualquier vehículo de motor será responsable de los daños y perjuicios que se causen mediante la operación de dicho vehículo, interviniendo culpa o negligencia, cuando el referido vehículo sea operado o esté bajo el control físico y real de cualquier

---

[60] *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170, 186 (2008).
[61] *Pons v. Engebretson,* supra, págs. 355-356.
[62] *López v. Porrata Doria,* supra, págs. 166-167.
[63] *Sagardía de Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484, 505 (2009).
[64] *López v. Porrata Doria,* supra, pág. 151.
[65] *Nieves Díaz v. González Massas,* supra, pág. 845.

persona que, con el fin principal de operarlo, o de hacer o permitir que el mismo sea operado por una tercera persona, obtenga su posesión mediante la autorización *expresa o tácita del dueño*. En todo caso se presumirá, salvo prueba en contrario, que la persona que opera o tiene bajo su control un vehículo de motor ha *obtenido su posesión con la autorización de su dueño,* con el fin principal de operarlo, o de *hacer o permitir que sea operado por una   tercera persona.*

La persona por cuya negligencia haya de responder el dueño de un vehículo, de acuerdo con las disposiciones de esta sección, vendrá obligada a *indemnizar* a éste.

[…].[66]

Esto implica que el propietario de un vehículo de motor responderá por los daños y perjuicios que emanen de la utilización de este mediando culpa o negligencia. Esta responsabilidad comprende los detrimentos provocados por un tercero que adquiere la posesión mediante la *autorización expresa o tácita* del dueño del vehículo de motor.[67]

### III.

En el recurso de epígrafe, la señora Rodríguez y la señorita Fuentes arguyen que el foro primario incidió al dictaminar que MJC Contractor, el señor Cuadrado y Universal no responden por la causa de acción incoada debido a que MJC Contractor no autorizó ni expresa ni tácitamente al señor Rodríguez a utilizar su vehículo. Las apelantes argumentan que el sistema de seguridad insuficiente en el almacén de automóviles de MJC Contractor fue el acto negligente que suscitó la cadena de eventos que provocó los daños reclamados, cuya resolución envuelve aspectos subjetivos y de credibilidad que deben evaluarse en un juicio en su fondo.

Por estar íntimamente relacionados, discutiremos conjuntamente los errores indicados.

Al examinar el expediente ante nuestra apreciación, surge que la solicitud de sentencia sumaria presentada por los apelados

---

[66] 9 LPRA sec. 5621. (Énfasis suplido).
[67] Véase *Natal Cruz v. Santiago Negrón,* 188 DPR 564, 572 (2013).

cumple con los requisitos esbozados en la Regla 36 de las de Procedimiento Civil, *supra.* Igualmente, consideramos que la oposición presentada por las apelantes cumple con los respectivos requisitos de forma de la regla procesal citada.

Empero, de una evaluación del petitorio dispositivo y su oposición, junto con sus anejos correspondientes, no surgen controversias de hechos materiales. Ambas mociones establecieron que el señor Rodríguez se apropió ilegalmente del vehículo Ford F-150 perteneciente a MJC Contractor. Además, se desprende de ellas que el auto tenía sus llaves en la ignición. Asimismo, se discurre de las solicitudes que el señor Rodríguez accedió al lugar luego de haber escalado el almacén al brincar la verja. Por último, luego de haber abierto el portón del almacén con una llave de perro, el señor Rodríguez provocó un accidente automovilístico al rebasar una luz roja.

Recalcamos que es la postura de los apelados y la adoptada por el foro primario que el conductor del vehículo con el que se causaron los daños **se apropió ilegalmente de este**. Ante esto, surge de las propias alegaciones de la demanda y de las contestaciones y escritos de las apelantes el hecho incontrovertido de que el conductor del vehículo **no tenía una autorización expresa o tácita de MJC Contractors**, dueño registral del auto, para poseerlo. Según precisamos y conforme a las disposiciones del Artículo 21.01 de la *Ley de Vehículos y Tránsito de Puerto Rico*, supra, el dueño registral de un vehículo solo responde por los daños y perjuicios que se causen mediante la operación de ese automóvil, interviniendo culpa o negligencia, cuando este sea operado por una tercera persona **con la autorización expresa o tácita del dueño**.

Por ello, resultan improcedentes los planteamientos de las apelantes de que el acto negligente de MJC Contractor de no tener un sistema de seguridad adecuado fue la causa próxima que provocó

los daños, y que, por consiguiente, los apelados responden por los daños sufridos. La citada ley delimita el grado de responsabilidad del dueño de un vehículo cuando una tercera persona opera el mismo. En consecuencia, se deriva que lo neurálgico y determinante para establecer la responsabilidad del propietario de un vehículo de motor es si hubo o no una autorización expresa o tácita para la operación del automóvil por parte del dueño. La falta de esta autorización acarrea que no se le imponga responsabilidad al titular del auto.

En conclusión y de conformidad con la legislación especial aplicable y las determinaciones de hecho del foro primario, confirmamos la *Sentencia* apelada. Colegimos que quedó probado como hecho incontrovertido que el señor Rodríguez no tenía autorización expresa o tácita de MJC Contractor para operar o tener la posesión del vehículo que ocasionó los daños. La falta de autorización expresa o tácita por parte de MJC Contractor le eximió de responsabilidad y, consecuentemente, a su aseguradora, Universal, por los daños reclamados.

Por último, precisamos que es innecesario discutir la responsabilidad del señor Cuadrado en esta instancia por lo expresado anteriormente sobre la exención de MJC Contractor.

**IV.**

En virtud de lo anterior, se confirma la *Sentencia* apelada.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Cintrón Cintrón disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones